**THORNTON, Appellant,**

v.

**THORNTON, Appellee.**

[Cite as *Thornton v. Thornton* (1990), 70 Ohio App.3d 317.]

Court of Appeals of Ohio,
Wyandot County.

No. 16–89–10

Decided Nov. 15, 1990.

*Karen E. Elliott,* for appellant.

*Kathleen Aubry,* for appellee.

---

THOMAS F. BRYANT, Judge.

This is an appeal from a judgment of the Court of Common Pleas of Wyandot County, Domestic Relations Division, granting appellant, Judith Thornton and appellee, Thomas Thornton, their petition for divorce and awarding to Thomas Thornton custody of the four minor children, as well as

the bulk of the marital assets and debts. It is from this judgment Judith Thornton now appeals, asserting six assignments of error.

Appellant's first and second assignments of error are as follows:

"The trial court erred in awarding custody of the minor child, Jennifer, age 12 years at the time of hearing, to the defendant where the child elected to be in the plaintiff's custody and the trial court made no finding that either the plaintiff was unfit or that it would not be in the child's best interest to choose."

"The trial court erred and abused its discretion when it awarded custody of the minor children to the defendant where the plaintiff had taken a primary role in the activities and care of the children and the defendant's care was provided primarily through his employees because of his employment."

The trial court stated in its journal entry that in awarding custody of the four minor children and deciding the best interest of the children there were a number of factors to be considered.

The trial court examined appellant's assertion that she was the primary caretaker of the children and determined that appellant had failed to fulfill these responsibilities. The trial court determined that the filthy and unsanitary conditions of the home in which the children resided was due to plaintiff's lack of attention and motivation. While the trial court did not absolve either party from the responsibility for permitting such an environment to exist, it found that appellee at least recognized the problem while appellant denied that there was a problem. The investigative report by the Department of Human Services showed a dead mouse and dog feces on the floor where the youngest child, who is handicapped, crawled. Appellant's bedroom and linens were dirty. The children's clothing was scattered about the house. The general condition of the floors, walls, and furnishings all gave the impression that the children were permitted to carry on in an unrestrained fashion.

Appellant "was the acknowledged housekeeper and the condition of the home in terms of cleanliness is deplorable to the extent that such an environment must impact on the children. It is difficult to believe that children raised in such a home can properly learn responsibility and there exists concern for their health and safety. Socialization with their peer group would also be difficult for the children's home would not lend itself to entertaining guests."

The court found that appellant often left the children unattended, creating a particularly dangerous situation because the youngest child had a brain shunt and occasionally experienced seizures requiring CPR. The trial court was

particularly concerned by appellant's failure to obtain recertification in CPR so that she would be capable of attending to the youngest child.

The trial court also found that appellant would not participate in family outings and celebrations, that her participation in the children's activities was limited, and that she had little concern for the oldest child's fluctuation in grades.

■    With regard to the oldest child's election of appellant as custodian, we are aware that "[t]he evidence necessary to negate the child's election must be substantial." *Venable v. Venable* (1981), 3 Ohio App.3d 421, 426, 3 OBR 498, 504, 445 N.E.2d 1125, 1131.  However, even where a parent is not unfit and notwithstanding the child's preference the court may find that awarding custody to such parent is not in the child's best interest. *Id.*  The paramount consideration in all events is the child's best interest and therefore the child's election is only one of the elements to be considered.  As to the other children, appellant claims that their care while with appellee is actually provided by his medical staff.  This assertion is not supported by the record.  Rather, the trial court specifically found that the appellee, "despite his workload, has been an integral part of the children's lives."  The trial court did not state that appellant was unfit but it certainly determined that from appellant's demonstrated lack of care and concern that it was not in the best interest of the children to be placed in appellant's custody.

"The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.  The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.  [Citation omitted.]  In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849.

We can find no support in the record for appellant's assertion that the trial court abused its discretion or disregarded the weight of the evidence in awarding custody of the four minor children to appellee pursuant to R.C. 3109.04.  See *Bowlin v. Black & White Cab Co.* (1966), 7 Ohio App.2d 133, 141, 36 O.O.2d 288, 292, 219 N.E.2d 221, 226; *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1251–1252.  Appellant's first and second assignments of error are overruled.

Appellant's third, fourth and fifth assignments of error are:

"The trial court erred and abused its discretion in including the defendant's ongoing business expenses as marital debt, thus reducing the value of the accumulated marital property."

"The trial court erred and abused its discretion in awarding the defendant the home and its contents and all of his business assets and awarding the plaintiff only an inoperable vehicle and a few household items out of a total of approximately $350,000.00 in assets."

"The trial court erred and abused its discretion in awarding only $300.00 per month in support alimony, postponing the payment of alimony for 2 years, and limiting its time to 3 years where the plaintiff was unemployed at the time of hearing, had not been employed for the last 13 years of the 15–year marriage, and desired to return to school to complete her education."

" ' "[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias * * *.' " " *Huffman v. Hair Surgeon, Inc., supra*, at 87, 19 OBR at 126–127, 482 N.E.2d at 1252 (quoting *State v. Jenkins* [1984], 15 Ohio St.3d 164, 222, 15 OBR 311, 361, 473 N.E.2d 264, 313).

"R.C. 3105.18 lists eleven factors to be considered by a trial court when making an alimony award or property division, [and] 'addressing these factors and all other relevant factors, helps to ensure that the result reached by the court is the most equitable result possible.' " *Gast v. Gast* (Dec. 13, 1989), Auglaize App. No. 2–88–14, unreported, 1989 WL 153591, (quoting *Cherry v. Cherry* [1981], 66 Ohio St.2d 348, 356, 20 O.O.3d 318, 322–323, 421 N.E.2d 1293, 1299).

"Marriage is a union of equals. Neither party should make a profit at the expense of the other. However, even a 50–50 property division may, in certain instances, result in one party profiting at the expense of the other. This is why it is ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce. A trial court must have discretion to do what is equitable upon the facts and circumstances of each case * * *. A reviewing court may modify or reverse a property division, if it finds that the trial court abused its discretion in dividing the property as it did * * *." *Cherry*, 66 Ohio St.2d at 355, 20 O.O.3d at 322, 421 N.E.2d at 1299.

██ The trial court in examining the eleven factors enumerated in R.C. 3105.18 reached several conclusions concerning the financial status of the marriage. First, the trial court noted that the standard of living of this family of six was very meager. The trial court awarded the majority of the marital assets to appellee but also awarded him the substantial debt encumbering the assets.

The trial court specifically found that appellant's contribution to the marriage during the last few years had a negative impact on the value of the assets. Appellant created large charge card debts for gasoline and for items she returned for cash refunds. Appellant made no effort to repair or maintain the home, thus contributing to its dimunition in value. Additionally, appellant permitted chickens kept on the farm to die rather than accept responsibility to care for them.

██ The business debt offset against the parties' assets was an accumulation of business bills unpaid because the funds with which they might have been paid were used to pay for appellant's profligate purchases. The trial court awarded the bulk of the household goods and furnishings to appellee because appellant testified she was not interested in having the majority of it and "to award the goods in any other manner [would] ultimately have an adverse impact on the children, who will be the primary users of these materials." The appellant was awarded her inoperable motor vehicle, but appellee was ordered to pay the $11,200 still owing on the loan used to purchase that vehicle.

██ Although appellee received custody of all four children, appellant was not ordered to pay child support. The trial court also determined it was not prudent to award sustenance alimony at the time of trial. The trial court found the appellant to be a reasonably young, healthy individual who has two years of college education, no impediments to seeking employment outside the home, and freedom from the child support obligations ordinarily associated with the status of a noncustodial parent. The trial court determined that the appellee should assist appellant with her plans to finish her college education and to this end should pay appellant $300 a month commencing June 30, 1991. The trial court ordered a two-year hiatus from the trial date until commencement of alimony payments because appellee has the sole financial responsibility for the four minor children, is ordered to pay the bulk of the debts of the marriage, and is engaged in a financially troubled medical practice. The trial court determined that the only means by which appellee would be able to succeed in meeting these responsibilities would be through hard work and prudent management of income and expenses.

A marriage is a union of equals and no party should profit at the expense of the other. *Cherry,* 66 Ohio St.2d at 355, 20 O.O.3d at 322, 421 N.E.2d at 1299. It is evident from the record that the trial court was faced with dividing the assets and responsibilities of a debt-ridden family of six. Appellant was given those household items she requested, and little of the financial obligations incurred as a result of her extravagant and perhaps eccentric spending habits during the marriage. She will have none of the financial or daily care responsibilities of her four children and will eventually receive alimony for three years. Appellee received the bulk of the assets, but he must pay the concomitant debt encumbering those assets as well as a substantial debt owing for a vehicle to be owned by appellant. In addition, he must accept custody and ensuing financial responsibility of the four minor children and a three-year alimony obligation. All of the foregoing monetary obligations must be paid from the earnings of appellee's financially struggling medical practice.

The trial court was responsible for dividing a meager loaf between these parties and we can find no abuse of discretion in its resolution of a very difficult situation. For the court to have decided otherwise would have allowed one party to profit at the expense of the other. Appellant's third, fourth and fifth assignments of error are overruled.

Appellant's sixth assignment of error is:

"The trial court erred and abused its discretion in ordering automatic cessation of support alimony upon the plaintiff's cohabiting in a family relationship with another."

"Post-divorce unchastity upon the part of the former wife *is not grounds for automatically terminating the alimony* award but may be considered in a subsequent modification proceeding insofar as it is relevant to the issues of continued need for such alimony and the amount." (Emphasis added.) *Wolf v. Wolf* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413, paragraph three of the syllabus. See, also, *Stevens v. Stevens* (1986), 23 Ohio St.3d 115, 122, 23 OBR 273, 279, 492 N.E.2d 131, 136–137.

Appellant's assignment of error is sustained and the order of alimony is modified accordingly.

For the reasons stated above and upon the authorities cited and discussed, the judgment of the Court of Common Pleas of Wyandot County, Domestic Relations Division, is affirmed in part and modified in part.

*Judgment affirmed in part*
*and modified in part.*

SHAW, P.J., and EVANS, J., concur.