GARDINI, F.K.A. MOYER, APPELLEE, v. MOYER, APPELLANT.

[Cite as *Gardini v. Moyer* (1991), 61 Ohio St.3d 479.]

---

4. Pursuant to former R.C. 2315.19(A)(2), Goodyear's liability was several, given a finding of plaintiff negligence.

480

(No. 90–764—Submitted May 14, 1991—Decided August 21, 1991.)

*Robert R. Melnick,* for appellee.

*Thomas & Boles* and *Edgar H. Boles,* for appellant.

---

HOLMES, J.   The central issues presented in this case are whether former R.C. 3109.04(B)(1)(c) (now found in R.C. 3109.04[E][1][a][iii]) provides for a modification of custody where the child's physical health or his mental, moral, or emotional development will be endangered by an environmental condition presented by the custodial parent.   Second, we must determine, upon all facts and circumstances presented to the trial court in this matter, whether or not the trial court abused its discretion in its order changing the custody of these children.   For the reasons that follow, we answer the first query in the affirmative and the second in the negative.

Appellant asserts that to warrant a change of custody, former R.C. 3109.-04(B)(1)(c) does *not* require actual present harm inflicted upon a child from his present environment.   We agree.

Former R.C. 3109.04(B) provided in pertinent part:

"(1) * * * [T]he court shall not modify a prior custody decree unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] his custodian * * * and that the modification is necessary to serve the best interest of the child.   In applying these standards, the court shall retain the custodian * * * designated by the prior decree, unless one of the following applies:

" * * * *

"(c) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to

be caused by a change of environment is outweighed by the advantages of the change of environment to the child." [3]

In construing R.C. 3109.04, this court has previously stated with respect to a modification of custody that "[t]here is no question that the paramount and overriding concern of the * * * statute is the best interests of the child, or in this case children, and that it is the court's function to see that the children's best interests are protected." *Birch v. Birch* (1984), 11 Ohio St.3d 85, 87, 11 OBR 327, 330, 463 N.E.2d 1254, 1257; see, also, *Boyer v. Boyer* (1976), 46 Ohio St.2d 83, 87, 75 O.O.2d 156, 158, 346 N.E.2d 286, 288. Consistent with the foregoing approach and a reasonable construction of the statute, we do not read former R.C. 3109.04(B)(1)(c) so narrowly as to require an actual present danger to the child (or children) in his or her present environment in order to establish grounds for a modification of custody. Instead, all that is required is a showing made by the party seeking a modification of custody that some action by the custodial parent presently endangers the child or, with a reasonable degree of certainty, will manifest itself and endanger the child in the future if the child is not removed from his or her present environment immediately. It would be illogical to require the noncustodial party to prove an actual present danger to the child where it is beyond speculation that the child's physical health, mental, moral, or emotional development will be adversely affected in the future by the present actions of the custodial parent.

In our inquiry in this case we are cognizant that "[i]n proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by [the] printed record." *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774. Moreover, it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses. *Pasqualone v. Pasqualone* (1980), 63 Ohio St.2d 96, 17 O.O.3d 58, 406 N.E.2d 1121. Thus, "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus.

In the case *sub judice,* our careful review of the record reveals that there was a substantial amount of credible and competent evidence to show that the

---

**3.** Effective April 12, 1990, former R.C. 3109.04(B)(1)(c) was amended and the clause containing the term "present environment" was deleted. As amended and renumbered, R.C. 3109.-04(E)(1)(a)(iii) provides: "The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

children are endangered both by their present environment and the inevitable effects of their present environment upon their future development. Therefore, we find that there was a sufficient quantum of evidence to support the trial court's award of custody to appellant.

We wish to make it clear that we need not address, and do not address, the merits of the parties' arguments as to the propriety of home schooling. Rather, we let stand the decision of the trial court that, under the circumstances of this case, it was inappropriate to place the Moyer children in a home schooling program.

Accordingly, for the foregoing reasons, we reverse the judgment of the court of appeals and reinstate the trial court's decision.

*Judgment reversed.*

MOYER, C.J., SWEENEY, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. This is a difficult case. We are asked today, as the lower courts were asked before us, to determine whether a custodial parent may home school her, or his, children over objections from the non-custodial parent. The laws of Ohio grant educational decisions to the custodial parent. Therefore, if the non-custodial parent objects to home schooling, a change of custody appears to be the remedy.

Teaching children in the home predates communal schooling by centuries. Home schooling, however, is a relatively recent innovation since the state took over responsibility for education. With our modern understanding of "socialization" and "normalization" of children, and our now firmly rooted tradition of communal education, many are skeptical of home schooling. This has to be true of judges whose professions make personal and societal interactions an imperative and whose own education was by necessity filled with personal interactions.

This skepticism towards home schooling appears to have carried the day. While I admit to sharing this skepticism, I cannot apply my personal predeliction to the facts of this case.

Under former R.C. 3109.04(B)(1)(c), applicable here, custody modification requires a finding that the "child's present environment endangers significantly his [or her] * * * mental, moral, or emotional development * * *."

The evidence in this case supports a finding of "significant endangerment" only if the opinion of the court-appointed psychologist is accepted without reservation. This opinion is based primarily on the belief that home schooling is inherently harmful to the normal development of children—all children.

The psychologist also opined that this effect is even worse where there has been a divorce. The psychologist expressed little concern for these children other than through her general condemnation of home schooling. Therefore, assertions by the majority to the contrary notwithstanding, it appears a trial court can never abuse its discretion in ordering a change of custody where the custodial spouse opts for home schooling.

I consider such a result unwarranted on the basis of the record before us. The evidence in this case is that Mrs. Gardini is a fit and good mother with normal, "delightful" children. The state, which sanctions and regulates home schooling, approved her application for this alternative form of education. No household provides for perfect "normalization" or "socialization," nor are schools perfect at this task. Further, wrenching children from one household to another is also detrimental to them.

I sympathize with Mr. Moyer. I would seek custody, too, if I were in his shoes, based, at least in part, on an inherent distrust of home schooling. However, I cannot condone our indictment today of a state-sanctioned, educational alternative before giving it any chance of success. Likewise, to apply the ultimate sanction of change in custody is far too harsh.

One year from now it may be possible for Mr. Moyer to show specific harm to his children as a result of home schooling. At that time, he has a remedy, such as change of custody. However, that time has not come. Therefore, I respectfully dissent from the judgment of the majority.