BEEKMAN, Appellee,

v.

BEEKMAN, n.k.a. Sturgell, Appellant.

[Cite as *Beekman v. Beekman* (1994), 96 Ohio App.3d 783.]

Court of Appeals of Ohio,
Pike County.

No. 93 CA 519.

Decided Oct. 25, 1994.

*Paul W. Cox, Jr.,* for appellee.

*Richard T. Schisler,* for appellant.

GREY, Judge.

This is an appeal from a judgment of the Common Pleas Court of Pike County. The court found there had been a change of circumstances and granted a change of custody of one of the parties' minor children from the mother to the father. We affirm.

The parties were divorced on August 28, 1991. Mrs. Beekman, now Mrs. Sturgell, was granted custody of the parties' two minor children, Whitney, d.o.b. March 22, 1990, and Clinton, d.o.b. February 2, 1988. 'Mr. Beekman ("Beekman") was granted visitation. The record shows that Sturgell continually refused to comply with the court-ordered visitation and that Beekman responded with motions for contempt to compel visitation. On September 21, 1992, Sturgell was found in contempt, sentenced to thirty days in jail and required to pay $125 for Beekman's attorney fees. The sentence was suspended provided Sturgell complied with the court-ordered visitation and paid the attorney fees before November 1, 1992.

After the finding of contempt, visitation went well for approximately one month. Then Sturgell again refused visitation, charging that Beekman had sexually abused Whitney. Children's Services was notified, the authorities were called to investigate and psychological profiles were ordered. The charges were never substantiated. Beekman then moved for a change of custody, arguing that the on-going refusal to honor the court-ordered visitation constituted a change of circumstances. The case was heard on December 19, 1992 and March 19, 1993. On August 27, 1993, the court filed its judgment awarding custody of Clinton to Beekman and granting visitation to Sturgell. Sturgell timely filed a notice of appeal and assigns the following errors.

FIRST ASSIGNMENT OF ERROR

"The trial court erred in modifying the earlier allocation of parental rights and responsibilities by separating the children, when the manifest weight of the

evidence showed no material change of circumstances, therefore, rendering the modification contrary to law."

SECOND ASSIGNMENT OF ERROR

"The trial court erred by modifying the allocation of parental rights and responsibilities, which resulted in the separation of the children, because such modification was not in the best interest of the children."

In her first assignment of error, Sturgell argues there is insufficient evidence in the record to show a change of circumstances. In her second, she argues that there is insufficient evidence in the record to show that the custodial change was in the best interest of the child. Since both assignments of error address the weight of the evidence, they will be reviewed together.

In reviewing divorce cases, a court generally applies an abuse of discretion standard. In *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030, the court wrote:

"In general, when reviewing the propriety of a trial court's determination in a domestic relations case, this court has always applied the 'abuse of discretion' standard. This has been true in cases reviewing an order relating to alimony, see *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140; a division of the marital property, see *Martin v. Martin* (1985), 18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112; or a custody proceeding, see *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, see *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 322, 421 N.E.2d 1293, 1299, it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment. * * * As this court has held many times, an ' "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * * ' See, *e.g., Blakemore, supra,* [5 Ohio St.3d] at 219, 5 OBR at 482, 450 N.E.2d at 1142."

In *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248, the Ohio Supreme Court described "abuse of discretion" in the following terms:

" ' "[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. * * * " ' " *Id.* at 87, 19

OBR at 126–127, 482 N.E.2d at 1252. See, also, *Thornton v. Thornton* (1990), 70 Ohio App.3d 317, 321, 590 N.E.2d 1375, 1377.

This exercise of discretion, however, is not unlimited, but must always be rooted in the facts of the case. For example, while the granting or denying of a change of custody is within the discretion of the court, there must be sufficient factual evidence in the record to support the court's finding as to the change in circumstances, best interests, etc.

■ When reviewing an assignment of error alleging insufficient evidence, we must give deference to the finder of fact and are not free to substitute our judgment for that of the trial court. In *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273, the Ohio Supreme Court set the guidelines by which a court of appeals may overturn a lower court decision as well as the amount of weight to be placed on the finding below. The court held:

" ' * * * [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

" 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Id.* at 80, 10 OBR at 410, 461 N.E.2d at 1276.

■ Deference is given to the trier of fact because he is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* These observations, and the information to be gleaned from them, do not come across to the reviewing court through the printed record. *Gardini v. Moyer* (1991), 61 Ohio St.3d 479, 575 N.E.2d 423.

In *Gardini,* the Supreme Court said that resolution of disputed questions of fact was for the trial court and noted that there need not be a showing of present harm to warrant a change in the custodial parent under R.C. 3109.04(E)(1)(a)(iii), formerly R.C. 3109.04(B)(1)(c), and stated:

"In construing R.C. 3109.04, this court has previously stated with respect to a modification of custody that '[t]here is no question that the paramount and overriding concern of the * * * statute is the best interests of the child, or in this case children, and that it is the court's function to see that the children's best interests are protected.' *Birch v. Birch* (1984), 11 Ohio St.3d 85, 87, 11 OBR 327, 330, 463 N.E.2d 1254, 1257; see, also, *Boyer v. Boyer* (1976), 46 Ohio St.2d 83, 87, 75 O.O.2d 156, 158, 346 N.E.2d 286, 288. Consistent with the foregoing approach

and a reasonable construction of the statute, we do not read former R.C. 3109.04(B)(1)(c) so narrowly as to require an actual present danger to the child (or children) in his or her present environment in order to establish grounds for a modification of custody. Instead, all that is required is a showing made by the party seeking a modification of custody that some action by the custodial parent presently endangers the child or, with a reasonable degree of certainty, will manifest itself and endanger the child in the future if the child is not removed from his or her present environment immediately. It would be illogical to require the noncustodial party to prove an actual present danger to the child where it is beyond speculation that the child's physical health, mental, moral, or emotional development will be adversely affected in the future by the present actions of the custodial parent." *Id.*, 61 Ohio St.3d at 484, 575 N.E.2d at 426–427.

Although the record shows Sturgell's continuing refusal to comply with the court-ordered visitation, and although Beekman claims the charge of sexual abuse was concocted to deny him visitation, Sturgell argues that there is no evidence of changed circumstances. Dr. Hagen, Sturgell's expert witness, did not express an opinion about whether the charges were true. He testified that he found no evidence of coaching by Sturgell, but even if the charges were unsubstantiated, the best interest of the children would be served if they remained with their mother.

Dr. Skillings, Beekman's expert, testified that the charges against Beekman were not true. He said the children had probably been coached by their mother and that coaching indicated a serious flaw in that parent. Skillings testified that a parent who makes such a false allegation is concerned primarily with his or her own selfish motive, and not with what is best for the children. If the court believed Skillings' testimony, it could reasonably find that the children were coached by their mother in an effort to alienate them from their father's side of the family.

Counsel for appellant argues that this case is not about whether appellee sexually abused his daughter, but whether there has been factual evidence to warrant a change of custody. To appellant, a false accusation of sexual abuse is not a factual circumstance to be considered in custody decisions, but only a tactic to be used in visitation disputes.

In *Barton v. Barton* (Feb. 20, 1990), Madison App. No. CA89–08–013, unreported, 1990 WL 14797, the Twelfth Appellate District held on similar facts:

"The court also found that appellant had used the children to punish the appellee on a continuing basis either completely denying him visitation or making visitation more difficult. The court concluded that appellant simply avoided responsibility for her actions by claiming criminal conduct by others at every

critical point. Appellant used the unsubstantiated allegations of sexual abuse to wrongfully deprive appellee of visitation. The trial court then concluded that based upon these changed circumstances, the children's interest would best be served by a change of custody."

■ We agree with the holding in *Barton,* and find that unsubstantiated allegations of sexual abuse are a change of circumstances and may be grounds on which to modify a prior custody award.

Although a court grants one parent custody and the other visitation, the children need to know that they are loved by both parents regardless of the antagonism the parents might feel for each other. It is the duty of each parent to foster and encourage the child's love and respect for the other parent, and the failure from that duty is as harmful to the child as is the failure to provide food, clothing, or shelter. Perhaps it is more harmful because no matter how well fed or well clothed, a child cannot be happy if he or she feels unloved by one parent.

■ When a court makes a custodial decision, it makes a presumption that the circumstances are such that the residential parent will promote both maternal and paternal affection. The residential parent implicitly agrees to foster such affection, not out of any good feeling toward the nonresidential parent, but out of the need of the child for both parent's love. Where the evidence shows that after the initial decree the residential parent is not living up to the court's presumption and is attempting to poison the relationship between the ex-spouse and the child, this is a change of circumstances that warrants a modification of the prior custody decree. Unsubstantiated allegations of abuse are the worst kind of poisoning of the relationship.

There is sufficient evidence in the record in this case to merit a finding of changed circumstances.

Sturgell argues there is nothing to show the change is in the best interest of the child. Skillings testified that Clinton could be easily manipulated and that to continue in an environment of manipulation could be detrimental. There is sufficient evidence to show that a change in custody was necessary to minimize the detrimental effects of manipulation.

Sturgell argues that the harm of the custodial change was not outweighed by its benefits. Specifically, she argues that separating the siblings would result in excessive harm. There is evidence in the record to show Clinton wanted to live with his father and Whitney wanted to remain with her mother. It appears that, under the new visitation schedule, the children will be spending every weekend together and all holidays together. There is sufficient evidence in the record to show the harm was not outweighed by the benefits of the custodial change.

Sturgell's first and second assignments of error are not well taken and are overruled.

## THIRD ASSIGNMENT OF ERROR

"The trial court erred in signing an Ex Parte Order modifying parental rights and responsibilities, which resulted in the separation of two children who had previously lived together."

Sturgell's third assignment of error asserts that the method by which the actual change of physical custody occurred was improper. It appears the court's entry was filed and the parties were notified as required under the Civ.R. 58. It also appears that as soon as it was filed, and before a copy had been sent to appellant or her counsel, appellee obtained a copy. He immediately proceeded to appellant's home, accompanied by a deputy sheriff, and took custody of Clinton. In domestic relations cases, where feelings often run high, the actual physical change of custody should be attempted so as to minimize contention. Generally, prior notice ought to be given to both parties so that they have enough time to make arrangements and expedite the transfer. However, where it appears that the demonstrated recalcitrance of one party may interfere with the orderly transfer, a court might permit a more summary transfer. It appears that is what happened in this case. We do not find this to be prejudicial to any of appellant's rights, and in light of her past conduct, it does not even appear to be error.

Sturgell's third assignment of error is not well taken and is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

HARSHA, P.J., concurs.

STEPHENSON, J., concurs separately.

HARSHA, Presiding Judge, concurring.

I write to expressly reenforce one point which the principal opinion makes. Often times the sole focus of the allocation of parental rights and responsibilities centers upon the desires of the mother and father. We tend to overlook the fact that the child has a right to companionship with the nonresidential parent that is independent of and at least equal to that of the adult. See *Porter v. Porter* (1971), 25 Ohio St.2d 123, 54 O.O.2d 260, 267 N.E.2d 299, paragraph three of the syllabus, and *In re Markham* (1990), 70 Ohio App.3d 841, 846, 592 N.E.2d 896, 900 (Harsha, J., concurring in part and dissenting in part). As the principal opinion correctly points out, a residential parent who continually and purposefully denies a child that right risks a determination that the status quo is no longer in

the child's best interest, based upon the totality of the circumstances as set forth in R.C. 3109.04(E)(1) and (F)(1).

Furthermore, if the trial court believed Dr. Skillings, as was its prerogative, that the allegations of sexual abuse were unfounded, it could properly conclude that such conduct was a change in circumstances. Such conduct would not be in the best interests of fostering a loving relationship between the nonresidential parent and child, regardless of the good faith involved on the part of the accusing parent. However, I agree with Judge Stephenson that we should not adopt a *per se* rule, but should maintain a totality of the circumstances approach in determining the child's best interest.

I further note that I do not condone appellee's method of transferring custody. While I find it to be distasteful and potentially harmful to the child and his relationship with appellant, I cannot conclude that it resulted in prejudicial error.

STEPHENSON, Judge, concurring.

I join in the majority judgment, but write separately to make several points. I join the majority in overruling the third assignment of error. Appellee's method of taking physical custody of his son pursuant to the court's judgment was, as aptly noted by Judge Harsha in his concurring opinion, distasteful. However, I am not persuaded that such conduct rises to the level of reversible error.

The tenor of the first and second assignments of error is that the lower court erred in modifying custody/allocation of parental rights. Such a modification would be warranted in the cause *sub judice* if (1) there had been a change of circumstances, (2) the modification was in the best interest of the child, and (3) any harm likely to be caused by a change in environment is outweighed by the advantages. See R.C. 3109.04(E)(1)(a). These are factual determinations to be made by the trial court and will be upheld on review by an appellate court so long as they are supported by some competent credible evidence. See *Holm v. Smilowitz* (1992), 83 Ohio App.3d 757, 772–773, 615 N.E.2d 1047, 1056–1058; see, also, *Yasher v. Yasher* (Mar. 24, 1994), Cuyahoga App. No. 65545, unreported, 1994 WL 97694.

I concur with the majority insofar as they determine that there was sufficient evidence adduced below to establish those factors and modify custody. The expert opinion of Dr. Skillings was that the allegations of sexual abuse were completely unfounded and probably "fabricated by an adult near the children." The witness further opined that any parent who would attempt to manipulate a child in that manner has serious flaws. Testimony by another psychologist revealed that such manipulation would certainly be a "detrimental experience for a child, to be coached and manipulated into saying something about the other parent." I agree that all of this was sufficient for the lower court to find that the

sexual abuse allegations were unsubstantiated. I also agree that this would be one factor to consider in deciding whether there had been a change of circumstances. However, I stop short of joining any suggestion in the principal opinion that this factor *standing alone* would warrant modification of custody/allocation of parental rights.

This is an extremely sensitive topic. It is difficult to even imagine a more horrific crime in our society than the sexual abuse of one's own child. By the same token, it was noted by Dr. Hagen below that there is a significant percentage of false sexual abuse allegations made "in the course of contested custody disputes." This tactic for achieving a preferential posture for child custody is almost as despicable as the act itself. The trial courts must walk a fine line in dealing with these cases and I certainly can sympathize with the court below. However, the judicial system is not perfect and mistaken judgments of fact are not uncommon. I decline to join in announcing any rule of law which could potentially penalize a residential parent who makes an allegation of sexual abuse which might be true despite a lack of supporting evidence. It seems to me that this could have a "chilling effect" on the reporting of suspected sexual abuse. Residential parents may not want to risk losing custody if they can't prove their case, no matter how well founded that case may be.

Moreover, we need not even reach that point in order to find sufficient evidence of a change of circumstances. There was considerable testimony below that appellant has impeded appellee's visitation with the minor children and it is well settled that this is a factor to be considered as part of a change of circumstances allowing for custody modification. See *Holm, supra* 83 Ohio App.3d at 773, 615 N.E.2d at 1057–1058; *Lenzer v. Lenzer* (1962), 115 Ohio App. 442, 21 O.O.2d 67, 183 N.E.2d 144; see, also, *Well v. Well* (1990), 70 Ohio App.3d 606, 610, 591 N.E.2d 843, 845 (Harsha, J., dissenting); *Grant v. Grant* (July 21, 1989), Wood App. No. WD–88–29, unreported, 1989 WL 80951; *Gordon v. Gordon* (Oct. 9, 1987), Athens App. No. 1334, unreported, at 15–16, 1987 WL 18751. There was also evidence to indicate that the minor children had been instructed or encouraged to disobey and disrespect both their father and paternal grandparents. These factors, in addition to the unfounded allegations of sexual abuse, are enough to establish a sufficient change of circumstances to modify custody.