OPINION
Merry Pathan ("Mrs. Pathan") appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which granted custody of her daughter to Karam Pathan ("Dr. Pathan").
The procedural history of the case is as follows.
The Pathans lived in California during their marriage. Mrs. Pathan was an Ohio native and Dr. Pathan was a native of Pakistan. They were divorced in June 1993 when their daughter, Sabina, was three years old. Mrs. Pathan returned to the Dayton area with Sabina when the parties separated. The parties agreed that Mrs. Pathan would be the residential parent and that Dr. Pathan would be given reasonable visitation. For the first year following the divorce, the parties apparently cooperated very well in a generous visitation arrangement for Dr. Pathan.
Problems with visitation began to occur in the summer of 1994 when Mrs. Pathan learned that Dr. Pathan had remarried. These problems were serious enough to necessitate court intervention. In December 1996, Dr. Pathan filed a motion for change of custody. Psychological evaluations of the parties and of Sabina were conducted, a guardian ad litem ("GAL") was appointed and he prepared a report, and a substantial amount of evidence was presented regarding the parties' interactions and how Sabina was affected by the strained relations.
Following the hearing on Dr. Pathan's motion for change of custody, the magistrate concluded that a change of circumstances had occurred because of Mrs. Pathan's psychologically abusive behavior toward Sabina and her active interference with visitation and telephone contact. The magistrate also determined that a serious problem existed in the way that Mrs. Pathan had handled her status as Sabina's residential parent. The magistrate acknowledged, however, that Sabina was very attached to Mrs. Pathan, that Mrs. Pathan had been the primary care giver, and that Sabina was well adjusted to her extended family and school in Dayton. The magistrate indicated that, although he had serious concerns about Mrs. Pathan's behavior, he was not convinced, at that time, that the advantages of changing custody of Sabina outweighed the harm. He ordered specific changes in the visitation arrangements and telephone contact and found that, if such changes did not occur, Sabina's interests could be served by a change in custody in the future. The trial court adopted the magistrate's decision on March 17, 1999, and scheduled a review hearing to ensure that consistent visitation was occurring. Like the magistrate, the trial court noted that if Mrs. Pathan continued to engage in a pattern of destructive behavior, it might be in Sabina's best interests to change custody in the future.
Dr. Pathan appealed from the trial court's decision. We affirmed the trial court's judgment insofar as it held that the advantages of a change in custody did not outweigh the harm at that time and that the problem should initially be addressed by ordering Mrs. Pathan to desist from using Sabina to retaliate against Dr. Pathan. Pathan v. Pathan (Jan. 21, 2000), Montgomery App. No. 17729, unreported. We noted, however, that "we strongly agree[d] with the trial court's determination to continue to monitor the family situation. * * * We agree[d] that if [Mrs. Pathan's] behavior [did] not change regarding [Dr. Pathan's] visitation and contact with Sabina, the trial court should consider a change of custody." Id.
Dr. Pathan filed another motion for change of custody on May 3, 1999, and a hearing was held on this motion in August 1999. In December 1999, the magistrate filed a Decision and Permanent Order in which he recommended granting custody of Sabina to Dr. Pathan due to Mrs. Pathan's continued refusal to cooperate with visitation and to comply with the orders of the court. The trial court adopted this recommendation, over objections, on March 31, 2000, finding that the change of custody was in Sabina's best interests due to Mrs. Pathan's obstruction of visitation and attempts to alienate Sabina from Dr. Pathan.
Mrs. Pathan raises three assignments of error on appeal.
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING APPELLANT'S BEHAVIOR TO BE ENOUGH TO ESTABLISH A CHANGE OF CIRCUMSTANCES REQUIRED BY OHIO REVISED CODE SECTION 3109.04.
Mrs. Pathan contends that, although she may have ignored the court's prior orders, no change of circumstances was shown so as to justify a change in custody. According to Mrs. Pathan, Dr. Pathan attempted to prove that she had not complied with prior court orders and that she was not complying with the most recent court order regarding visitation. She asserts that, even if her conduct was contemptuous, Dr. Pathan failed to demonstrate that anything had changed from the time of the prior order.
R.C. 3109.04(E)(1)(a) provides that a court may not modify a prior order allocating parental rights and responsibilities unless it finds that a change in the circumstances of the child or residential parent has occurred and that the modification is necessary to serve the best interest of the child. Insofar as it applies to this case, the statute further requires the court to retain the residential parent designated by the prior decree allocating parental rights unless a modification is in the best interest of the child and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. R.C. 3109.04(E)(1)(a)(iii).
In determining whether a change of circumstances has occurred so as to warrant consideration of a change in custody, the trial court must be given wide latitude to consider all issues which support such a change. Davis v. Flickinger (1997), 77 Ohio St.3d 415, paragraph two of the syllabus. When a trial court finds a change of circumstances, such a determination should not be disturbed absent an abuse of discretion. Id., paragraph one of the syllabus. Repeated interference by the custodial parent with the non-custodial parent's visitation may constitute a change of circumstances under R.C. 3109.04 because it affects the best interest of the child. Clark v. Smith (1998), 130 Ohio App.3d 648,655; Mitchell v. Mitchell (1998), 126 Ohio App.3d 500, 505;Beekman v. Beekman (1994), 96 Ohio App.3d 783, 789; Holm v.Smilowitz (1992), 83 Ohio App.3d 757, 773. "In today's society that fully admits the need for parenting by both parents, each parent should have full involvement in a child's life, where possible and desired by the parent. When one parent begins to cut out another parent, especially one that has been fully involved in that child's life, the best interest of the child is materially affected." (Emphasis sic.) Davis, 77 Ohio St.3d at 419.
Mrs. Pathan's reasoning that the trial court could not have found a change of circumstances based on her continued failure to follow its orders-because continuing the same conduct does not amount to a change of circumstances-is flawed. She seems to assume that the relevant time frame is the period between the trial court's previous order denying Dr. Pathan's motion for a change of custody and the time of the hearing. R.C.3109.04(E)(1)(a), however, requires a change of circumstancessince the prior order allocating parental rights andresponsibilities. In this case, the prior order allocating parental rights and responsibilities was the 1993 divorce decree. It appears from the record that Mrs. Pathan's efforts to interfere with visitation and to alienate Sabrina from Dr. Pathan began approximately one year after the divorce decree was entered. This conduct constituted a change of circumstances since the prior order allocating parental rights and responsibilities. Clark,130 Ohio App.3d at 655; Mitchell, 126 Ohio App.3d at 505; Beekman,96 Ohio App.3d at 789; Holm, 83 Ohio App.3d at 773. The trial court concluded that Mrs. Pathan had continuously interfered with visitation over a period of years, notwithstanding a prior court order to desist from such conduct. Under these circumstances, the trial court certainly did not abuse its discretion when it concluded that there had been a change of circumstances.If we were to adopt Mrs. Pathan's reasoning that her longstanding failure to comply with court orders regarding visitation did not constitute a change of circumstances, we would essentially force trial courts to change custody at the first sign of trouble between the residential and non-residential parent, rather than giving the residential parent an opportunity to conform his or her conduct to the requirements of the court's orders, as happened in this case. Such a rush to change custody, without trying less extreme measures for dealing with conflicts over visitation, would not be reasonable and certainly would not be in the best interest of the child involved.
Furthermore, we note that the trial court's order of March 17, 1999, in which it recognized Mrs. Pathan's significant interference with Dr. Pathan's relationship with Sabina but declined to change custody, was expressly conditioned on Mrs. Pathan's ability and willingness to cooperate with improving visitation and reducing alienation from Dr. Pathan. The order included some very specific steps for accomplishing these goals. The trial court was obviously unhappy with Mrs. Pathan's conduct and its effect on Sabina at that time and retained Mrs. Pathan as the residential parent with some reluctance. Mrs. Pathan cannot reasonably contend that the trial court was precluded from changing custody of Sabina in light of her continued failure to abide by its orders.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT MODIFIED THE RESIDENTIAL PARENT WHEN THE SAME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mrs. Pathan contends that the trial court's finding that she had refused to follow its previous orders was against the manifest weight of the evidence.
The trial court's discretion in custody disputes is quite broad, which necessarily limits the authority of an appellate court to reverse a custody determination as against the manifest weight of the evidence. Roach v. Roach (1992), 79 Ohio App.3d 194,208; Bell v. Bell (June 5, 1998), Clark App. No. 97-CA-105, unreported. In assessing the weight of the evidence, reviewing courts will not reverse judgments supported by some competent, credible evidence going to all the essential elements of the case.Bawidamann v. Bawidamann (1989), 63 Ohio App.3d 691, 695. The supreme court has recognized that the deference to be accorded to a trial court's assessment of the credibility of evidence in child custody disputes is especially great, because the credibility issue is "even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis,77 Ohio St.3d at 419.
Mrs. Pathan claims that the trial court's finding that she had interfered with telephone visitation between Dr. Pathan and Sabina was against the manifest weight of the evidence because she had testified that she had not interfered and because the GAL had believed this to be true. This testimony had been refuted, however, by Dr. Pathan's private investigator, who testified that he had observed Mrs. Pathan and Sabina to be at their home on several occasions when Dr. Pathan had called them and the phone had not been answered. Mrs. Pathan presented a phone log to the court which she claimed reflected the contact or attempted contact between Dr. Pathan and Sabina, but this log was contradicted by the telephone company's billing reports for Sabina's personal phone line. Mrs. Pathan offered no evidence that the calls had been made on a different phone line. Moreover, Dr. Pathan testified that Mrs. Pathan frequently hung up on him when he called Sabina or pressured Sabina to get off the phone, that Mrs. Pathan waited five months to install an answering machine for Sabina, as required by a court order, that once the answering machine had been installed, it was often turned off, and that Mrs. Pathan would occasionally tell Dr. Pathan that Sabina was asleep as early as 7:45 p.m. when he called to talk with her. The trial court could have reasonably concluded, based on this evidence, that Mrs. Pathan's conduct had been a substantial obstacle to telephone visitation between Dr. Pathan and Sabina.
Mrs. Pathan also claims that Dr. Pathan's attitude and motivation had made it impossible for her to comply with the court's order that the parties communicate for at least one-half hour each month about Sabina's activities, school work, visits, etc. Dr. Pathan contradicted this testimony and claimed that, in fact, it was Mrs. Pathan who had refused to cooperate with this communication. Dr. Pathan stated that he had resorted to writing letters to Mrs. Pathan when she refused to have telephone conversations with him, and he provided some documentation to support this claim. The trial court could have reasonably concluded that Dr. Pathan's testimony on this issue was more credible than Mrs. Pathan's testimony.
Mrs. Pathan further contends that her failure to comply with the counseling requirements of the court's prior order resulted from her misunderstanding of that order and its ambiguity as to whether the counseling was ordered for Sabina only or for Mrs. Pathan and Sabina. Given that the court's counseling order was specifically directed toward "reducing parental alienation," the court could have reasonably concluded that Mrs. Pathan was not credible when she claimed that she had misunderstood the fact that she was supposed to participate in the counseling with Sabina.
Mrs. Pathan also contends that her testimony that she had not discussed with Sabina her conflicts with Dr. Pathan was unrefuted. While this may be technically true, there was evidence in the record that she had alienated Sabina from Dr. Pathan in a variety of ways. Dr. Donald Weinstein, a clinical psychologist who had spent several hours with Sabina, testified that his attention had been drawn to numerous subtle ways that Mrs. Pathan had alienated Sabina from Dr. Pathan. For example, she had enrolled Sabina in a Christian school when Sabina identified herself most closely with the Muslim faith of her father. Mrs. Pathan or her family members had also encouraged Sabina to watch television programs depicting a foreign-born father kidnaping his child from an American-born mother, a situation with which Sabina might identify so as to increase her fear of her father. Dr. Weinstein concluded that Sabina tended to "play out the alienation" engendered by her mother to please Mrs. Pathan, so that Sabina's actions and statements to the GAL and others did not necessarily reflect her own feelings. He characterized Sabina's relationship with her mother as "an unhealthy psychological bond" and "pathogenic." Mrs. Pathan's claim that she had not "discussed" with Sabina her conflicts with Dr. Pathan was also contradicted by Dr. Pathan's testimony and other evidence about Mrs. Pathan's active interference with telephone communications. By all accounts, Sabina is a very bright girl, and she was undoubtedly able to glean her mother's feelings toward her father from the disruptive activities in which the trial court found that her mother had engaged.
It is important to note that the allegations made at this particular hearing were cast on a background of other actions by Mrs. Pathan to obstruct visitation and to alienate Sabina from her father. The court was aware of the background and acted within its discretion to view Mrs. Pathan's claims of full cooperation with some skepticism, especially in light of her inability to document many of her claims.
The trial court could have reasonably found that Dr. Pathan's version of the events involving the parties and the tone of their interactions was more credible than Mrs. Pathan's version based on the totality of the evidence. As such, the trial court could have reasonably concluded that Dr. Pathan would provide a healthier environment for Sabina and would be better able to foster good relations with both parents than Mrs. Pathan had been. The trial court did not err in concluding that it was in Sabina's best interest to grant custody to Dr. Pathan and that the harm which would be caused by such a change was outweighed by the advantages at the time of the order.
The second assignment of error is overruled.
 III. THE COURT ERRED BY IGNORING THE REPORT AND RECOMMENDATION OF THE GUARDIAN AD LITEM CONCERNING THE PROPOSED CHANGE OF CUSTODY AND THE STATED WISHES OF THE CHILD.
Mrs. Pathan contends that the trial court erred in ignoring the report and recommendation of the GAL. The GAL recommended that there be no change in custody based on Sabina's attachment to her mother, her school, and her friends in Ohio.
The role of the GAL is to investigate the child's situation and then to ask the court to do what the guardian believes is in the child's best interest. In re Baby Girl Baxter (1985),17 Ohio St.3d 229, 232. The ultimate decision in any proceeding, however, is for the trial court and not the GAL. In re Height (1975),47 Ohio App.2d 203, 206. Therefore, the court is not required to follow the recommendation of the GAL. Id.
The GAL who was appointed in this case spent time with Sabina and with Mrs. Pathan, but her primary contact with Dr. Pathan was one telephone conversation. Because the GAL repeatedly testified that she had not felt it was her responsibility to initiate contact with Dr. Pathan or to seek information from him, her report was heavily based on her observations of Mrs. Pathan and Sabina and upon feelings expressed by Sabina while she was living with her mother. The GAL had little, if any, knowledge of how Dr. Pathan and Sabina interacted with one another. The trial court could have reasonably considered this factor in determining the weight to be given to the GAL's report.
Furthermore, the GAL admitted that she was not well-versed in the parental alienation syndrom and she had no psychological training. Dr. Weinstein testified that numerous factors discussed in the GAL's report supported his conclusion that parental alienation was occurring, and he explained that many of Sabina's statements and actions with the GAL could have resulted from "playing out the alienation" to please her mother.
Given the GAL's limited information about Dr. Pathan and the other testimony concerning her report, the trial court could have reasonably concluded that the GAL's report was not entitled to significant weight.
The third assignment of error is overruled.
 ______________________ WOLFF, J.
GRADY, P.J. and BROGAN, J., concur.