OPINION
Holly Sabins is appealing the judgment of the Montgomery County Common Pleas Court Domestic Relations Division, which altered the custodial arrangement for her son, removing custody from her and granting it to her former husband, Jeffrey Sabins.
On June 11, 1997, Holly and Jeffrey Sabins (hereinafter we will refer to the parties as "Holly" and "Jeffrey") divorced after a brief marriage. Holly was given custody of the parties' only child, Dustin, who was born on October 27, 1994. Jeffrey filed a motion for a change in custody in November of 1998. In October of 1999, the parties agreed to exchange Dustin on an alternating week basis with a future review before Dustin begins kindergarten. On July 18, 2000, since the time had come for Dustin to enroll in kindergarten, a magistrate held a hearing to determine whether Holly or Jeffrey, who both sought to be the primary residential parent, should have sole custody.
At the hearing, Jeffrey expressed concern over Dustin's poor behavior when he returns from staying with Holly. Additionally, Jeffrey testified that the relationship between the parents had been bitter since the divorce, particularly in Holly's attitude towards Amy, Jeffrey's new wife. Jeffrey and Amy testified that Holly had denied him visitation at times and that on many occasions, when Jeffrey would try to exercise his visitation, Holly would resort to yelling, screaming, and using foul language towards Jeffrey in front of Dustin. Amy testified that for a period of time Jeffrey was forced to take a police escort with him in order to pick up his son. Jeffrey and Amy also relayed that on one occasion Holly threw a bottle of Dustin's medication at Jeffrey's vehicle. Jeffrey testified that he could better facilitate visitation between the parties.
Moreover, Jeffrey testified that Holly failed to inform him regarding in which preschool Dustin was enrolled or share any of his medical records. The relationship between Amy and Dustin is excellent and she encourages the relationship between Dustin and Holly. Additionally, Dustin and Jeffrey engage in several activities together such as bicycle riding, a children's bowling league, building a playhouse, and going to church.
Holly testified that her home is better suited for raising a child, as it has a fenced in backyard, is on a dead end street, and is close to a park and the elementary school Dustin would attend. Holly expressed that this was safer than Jeffrey's home which has a railroad next to the back yard.
A guardian ad litem (hereinafter "GAL") was appointed and interviewed Holly, Jeffrey, and Dustin. The GAL found Dustin to be more appropriately parented while at Jeffrey and Amy's home and to receive very little discipline when with Holly. Additionally, the GAL noted that Holly continued to have a large amount of bitterness towards Amy and blamed Amy for the problems between herself and Jeffrey. Moreover, the GAL found that Holly possessed a disregard for Jeffrey's parenting rights and instead regarded him as a nuisance. Thus, the GAL recommended Jeffrey be granted custody and Holly receive minimum visitation.
The magistrate agreed with the GAL and found that Holly's "unwillingness to cooperate with [Jeffrey] and reduce conflict between the parties indicated her inability at this time to place Dustin's needs above her own need to demonstrate anger against [Jeffrey]." Sabins v. Sabins (Aug. 25, 2000), Montgomery C.P. No. 96-DR-1956, unreported, 5. On August 25, 2000, the magistrate ordered that sole custody of Dustin should be given to Jeffrey. Holly filed objections to the magistrate's decision with the trial court on September 8, 2000 and supplemented those objections on November 13, 2000. On November 30, 2000, the trial court affirmed the judgment of the magistrate. Holly filed this timely notice of appeal.
Holly asserts one assignment of error:
 1. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT ORDERED THAT JEFFREY SHOULD BE THE CUSTODIAL PARENT.
Holly asserts that the trial court did not have sufficient evidence of either changed circumstances warranting a change in custody or that Dustin's best interests were served by a change of custody, and that the harm in changing custody outweighs the advantages of the change. We disagree.
In Ohio, a court may only modify a prior court order allocating parental rights and responsibilities if it finds a change in circumstances of the child or residential parent has occurred and the modification is necessary for the best interests of the child. R.C. 3109.04(E). Additionally, in order for the court to change the residential parent, it must find the harm of the change in custody is outweighed by the benefits of the change. R.C. 3109.04(E)(1)(a)(iii). A trial court's finding of a change in circumstances will not be reversed absent an abuse of discretion. Davis v. Flinkinger (1997), 77 Ohio St.3d 415, 418. An abuse of discretion amounts to more than a mere error of law but instead connotes an attitude on behalf of the court which is arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
If a custodial parent repeatedly interferes with the non-custodial parent's visitation, this may amount to a change of circumstances under R.C. 3109.04, since it affects the best interests of the child. Clark v. Smith (1998), 130 Ohio App.3d 648, 655; Mitchell v. Mitchell (1998),126 Ohio App.3d 500, 505; Beekman v. Beekman (1994), 96 Ohio App.3d 783,789; Holm v. Smilowitz (1992), 83 Ohio App.3d 757, 773. This court has also held that a change in circumstances may occur by a custodial parent continuing to interfere with visitation when the trial court had previously warned the parent to cease. Pathan v. Pathan (Sept. 15, 2000), Montgomery App. No. 18254, unreported (holding that a mother's continuous interference with a father's visitation amounted to a "change" of circumstances even though the interference had been an issue during previous hearings before the court which had resulted in the court not changing the custody arrangement).
In determining the best interests of the child, R.C. 3109.04(F)(1) provides that the trial court must consider the following applicable factors:
 (a) The wishes of the child's parents regarding his care; * * * (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to his home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court; * * * (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; * * * .
In the instant case, Jeffrey presented sufficient evidence of Holly's repeated interference with his visitation with Dustin for the court to determine that this amounted to a change of circumstances. As stated above repeated interference by a custodial parent, Holly, with a non-custodial parent, Jeffrey's, visitation with the child amounts to a change of circumstances. The trial court had before it evidence that Holly has denied Jeffrey his scheduled visitation on more than one occasion. There was evidence that many times Holly has yelled, screamed, and used foul language towards Jeffrey in front of Dustin when Jeffrey has come for his scheduled visitation. There was also evidence that this bitterness and hostility during visitation exchanges has culminated in Holly throwing bottles of Dustin's medication at Jeffrey's vehicle. Finally, the trial court had before it evidence that Jeffrey was forced to have the police escort him to pick up Dustin for visitation. This was ample evidence of repeated interference with Jeffrey's visitation with Dustin.
Holly argues that the conflict between herself and Jeffrey has been ongoing for a period of time, preceding Jeffrey's motion for a change of custody, and therefore the conflict does not amount to a "change." However, R.C. 3109.04(E)(1)(a) only requires a change of circumstances since the prior order allocating parental rights and responsibilities. As Holly states in her brief, the October 1999 agreement only altered the visitation schedule and did not change the 1997 divorce order making her the custodial parent. Like Pathan, as all of these interfered visitation exchanges have occurred since the original custody order, a "change" in circumstances has occurred since the previous order in 1997, which made Holly the custodial parent. Although several other factors likely support a finding of a change in circumstances, the evidence of interference with visitation was sufficient to merit such a finding. Therefore, the trial court did not abuse its discretion in determining that a change in circumstances had occurred.
Holly additionally argues that the trial court abused its discretion in determining that Dustin's best interests are served by placing him in Jeffrey's custody. Holly asserts that the trial court failed to consider all of the appropriate factors. Considering the factor relating to the child's interaction and interrelationship with his parents, the court found that the relationship between Jeffrey and Dustin was a more appropriate parenting relationship, in which Dustin behaves and responds better. Further the court found that the interrelationship between Holly and Dustin is poor as she is more immature and fails to put Dustin's needs above her own. Additionally, on the factor listed in R.C.3109.04(F)(1)(f), the trial court addressed that Jeffrey is more likely to honor and facilitate visitation than Holly, who yells, screams, and uses foul language towards Jeffrey in front of Dustin when Jeffrey arrives for scheduled visitation. Moreover, the court acknowledged that Dustin and Holly had lived in her home off and on since he was five months old. However, the court noted that Jeffrey's home was also adequate and that Dustin had spent a significant amount of time there as well. Further, the trial court noted that Holly had denied Jeffrey his scheduled visitation and had repeatedly created a stressful exchange of Dustin by screaming and demonstrating inappropriate behavior. This consideration by the court of the applicable statutory factors was sufficient to find that the best interests of Dustin were served by granting custody to Jeffrey.
Finally, Holly asserts that the harm of moving Dustin to Jeffrey's home in Troy and away from her home in Moraine exceeds the benefit of the custody change. However, Holly fails to support this assertion with any evidence. At the time of this decision, Dustin had been alternating weeks with Jeffrey and Holly for nearly a year and had adjusted to both locations. Contrary to Holly's assertion, Dustin behaved better and was more improved with Jeffrey. Therefore, the evidence supports a finding that the harm of changing custody does not outweigh the benefits. We find no abuse of discretion and Holly's assignment of error is without merit and overruled.
The judgment of the trial court is affirmed.
WOLFF, P.J. and GRADY, J., concur.