OPINION
This case is an accelerated calendar appeal. Appellant, Randall J. Moore, appeals from the judgment of the Domestic Relations Division of the Portage County Court of Common Pleas which denied his request to modify custody following the relocation of his former wife, appellee, Kelly E. Moore, with their son, out of the state of Ohio. For the reasons that follow, we affirm the judgment of the trial court.
Appellant and appellee were married in Aurora, Ohio on September 9, 1989. They had one child together in the marriage, to wit: Nicholas Moore, d.o.b. January 26, 1994 ("the child"). On October 23, 1995, the parties were granted a decree of divorce in the domestic relations court. Incorporated in the decree was a twenty-one page shared parenting plan ("the plan") entered into by the parties.
The plan provided that appellee would be the residential parent and appellant the non-residential parent of the child. It stated that appellant "shall have reasonable and liberal possession" of the child, including alternate weekends from Friday evening until Sunday evening, one mid-week, overnight visit, relevant special occasions such as Father's Day, alternate holidays and birthdays of the child, and eight weeks of vacation with the child.
The plan did not expressly require either party to remain in Portage County. However, the plan contained a provision which required the parties to file a "notice of intent to relocate" with the court should either party intend to move to a different residence. The provision stated:
"7. Notice of relocation
 "Pursuant to the determination made under O.R.C. 3109.051(G), the parties hereto agree as follows:
 "If either party intends to move to a residence other than the residence specified herein, said parent shall file a notice of intent to relocate with this Court. Except as provided in O.R.C. 3109.051(G)(2),(3), and (4), a copy of such notice shall be mailed by the court to the other parent. On receipt of the notice, the Court, on its own motion or the motion of either party, may schedule a hearing with notice to both parties to determine whether it is in the best interest of the child to revise the possession or parenting schedule for the child."
On November 2, 1995, or approximately ten days after the journalization of the divorce decree, appellee filed a notice of intent to relocate with the court pursuant to R.C. 3109.051 and the plan. Pursuant to the statute, appellant received notice of appellee's intent to relocate. In her notice, appellee indicated that she intended to relocate with the child to Michigan "to obtain employment and to reside with her parents." She further indicated that she did not have family, friends, or employment opportunities in the area of Aurora.
In response, appellant filed a motion for modification of custody on November 17, 1995. In his motion, appellant moved the court to grant him custody of the child "for the reason that a change of circumstances has occurred warranting the change of custody." He also requested that both parties and the child undergo psychological evaluations to assist the court in determining the custody issue, to which both parties agreed to submit.
The case was then referred to a magistrate for determination. While appellant's motion was pending, the magistrate issued a temporary order that if appellee actually moved to the state of Michigan, each parent would care for the child on alternate weeks.
On December 12, 1995, appellee filed an amended motion to her notice of intent to relocate. In the amended motion, appellee moved the court to terminate the shared parenting plan and award her full custody of the child, subject to reasonable visitation with appellant. In the alternative, appellee moved the court to modify the original shared parenting plan.
In January 1996, appellee moved with the child to Michigan to reside with her family. Appellee's new residence was approximately two hundred miles from appellant's residence. At that point, the parties initiated the alternate weeks of custody plan ordered by the magistrate, meeting halfway on the turnpike to effectuate the plan. On June 26, 1996, a hearing was held before the magistrate on the two motions of the parties. Again, these motions were appellant's November 17, 1995 motion for modification of custody and appellee's December 12, 1995 amended motion to terminate the shared parenting plan and award her full custody of the child, or in the alternative to modify the shared parenting plan.
Both parties were present at the hearing and were represented by counsel. At the hearing, both parties stipulated that the current temporary custody arrangement of alternate weeks of custody was unsatisfactory for all concerned. Appellee presented the testimony of her expert witness, Dr. Robert E. Erard, Ph.D. ("Dr. Erard") who stated that the current alternate weeks of custody plan was not good for the child. When asked what custody arrangement would be more appropriate for the child, Dr. Erard responded: "* * * assuming we have, basically, caring, competent parents, I think that it is important that the child continue to have significant contact with both parents, but that the transitions be considerably less frequent and that the child have one primary custodial home unless the parental homes are extremely close together."[1]
At the hearing, appellee testified that she had obtained a secretarial/clerical job which enabled her to work out of her residence in Michigan. Thus, she was directly able to take care of the child and perform her duties. Appellant testified that he was a traditional executive and vice president at a company in Hudson, Ohio, working sixty- hour weeks when the child was not with him. Appellant testified that he cut back his hours during the time he was caring for the child in order to spend more time with the child.
The magistrate also considered the report of another expert witness, Dr. John E. Alexander, Ph.D. ("Dr. Alexander") in rendering his decision.[2] Dr. Alexander was the court-appointed psychologist to whom the parties were originally referred as per appellant's request. Dr. Alexander had interviewed both parties, as well as the child. Although Dr. Alexander determined that both parents were quite capable of meeting the child's needs and were committed to his welfare, he felt that the child "may be expected to be still more attached to and dependent upon his relationship with his mother for his basic sense of safety and security in the world." Dr. Alexander also found it significant that appellee had a greater opportunity to spend direct parenting time with the child because the child was at an age where he would require a great deal of supervision and parental monitoring. He indicated that this would most likely be the case, regardless of where appellee lived.
In his report, Dr. Alexander stated that while appellee's move to Michigan "may be practical and understandable in terms of her own personal circumstances, her move is certainly not ideal in terms of Nicholas's continuing relationship with his father." However, he did state that this arrangement might be less harmful to the child than to other two-year-old children, as the child had been conditioned to frequent separation from both parents when appellee took him to Michigan for extended visits with her family prior to the divorce.
Dr. Alexander recommended that if the parties agreed to undertake the alternate weeks of the temporary custody plan, it should only be initiated on a three-month, trial basis, to see if the arrangement proved too emotionally difficult for the child. He also recommended that the period of separation of the child from either parent not exceed more than one week, as the child may become emotionally detached from the absent parent and view the absent parent more as a visitor than a primary attachment figure in the child's life. Finally, Dr. Alexander recommended that if the alternate weeks plan did not work out, he felt that appellee should return to Ohio, and the parties should return to the original shared parenting plan with appellee as the primary residential parent.
On July 15, 1996, the magistrate filed his decision on the motions. Among his findings, the magistrate determined that under the original shared parenting plan, it was contemplated that both parties were to remain in the Aurora area. The magistrate also found that the temporary arrangement of alternating weeks was not in the best interest of the child. The magistrate further interpreted Dr. Alexander's recommendations to indicate that although the original shared parenting plan was best for the child, in the event that the original plan would not work out and a primary residential parent must be named, that parent should be the child's mother, appellee. The magistrate also expressed disapproval of appellee's relocation to Michigan. The magistrate stated:
 "The mother's almost immediate relocation to Michigan is offensive to this Magistrate. It indicates at least a lack of concern, for both the child and his father, while negotiating the original shared parenting plan. Mother's relocation may be in her best interests, but, it was certainly not in the best interests of Nicholas. The Magistrate has some concern with the mother putting her own long term interest above those of her child, mainly in regard to his development and his relationship with his father." (Emphasis added.)
However, the magistrate decided to continue the shared parenting plan with modifications. In so doing, the magistrate stated: "[t]he Magistrate finds a significant change in circumstance, but denies the father's request to be named the sole residential parent and legal custodian. The mother has in fact already relocated and the Magistrate will continue the shared parenting plan with * * * modifications." The magistrate determined that appellant would be the residential parent on alternating long weekends from Thursday evening to Sunday evening, five weeks in the summer, certain holidays, and spring break. Appellee was designated the residential parent at all other times, and was ordered to pay one-half of the transportation costs involved in the modified plan.
Appellant filed objections to the magistrate's decision, and the trial court held a hearing on the matter.[3] On January 7, 1997, the trial court issued a judgment entry adopting the magistrate's findings and recommendations. On January 17, 1996, the trial court adopted the report and recommendations, exactly as recommended by the magistrate, as an order of the court.
From the January 17, 1996 order of the court, appellant perfected a timely appeal, asserting one assignment of error:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT GRANTED THE MOTHER'S MOTION TO RELOCATE TO MICHIGAN WITH THE PARTIES' TWO YEAR OLD SON AND DENIED THE FATHER'S MOTION TO MODIFY CUSTODY."[4]
Initially, we note that appellant has framed and argued his assignment to the effect that the trial court erred by granting appellee's motion to relocate with the child to Michigan. That characterization may reflect the impact of the court's judgment entry, but it does not accurately reflect what the court actually did. In fact, the trial court denied each party's motion to terminate the shared parenting plan in favor of sole custody. Instead, it chose to modify the existing shared parenting plan.
R.C. 3109.051(G)(1) deals with relocation of a residential parent and states:
 "If the residential parent intends to move to a residence other than the residence specified in the visitation order or decree of the court, the parent shall file a notice of intent to relocate with the court that issued the order or decree. Except as provided in divisions (G)(2), (3), and (4) of this section, the court shall send a copy of the notice to the parent who is not the residential parent. Upon receipt of the notice, the court, on its own motion or the motion of the parent who is not the residential parent, may schedule a hearing with notice to both parents to determine whether it is in the best interest of the child to revise the visitation schedule for the child." (Emphasis added.) R.C. 3109.051(G)(1).
Pursuant to the express terms of the statute, the trial court may schedule a hearing "to determine whether it is in the best interest of the child to revise the visitation schedule for thechild." R.C. 3109.051(G)(1). Thus, the relocation statute contains no provision granting the trial court the authority to deny the relocation. See, also, Spain v. Spain (June 21, 1995), Logan App. No. 8-94-30, unreported, at 2, 1995 WL 380067 (holding that "[t]he filing of the statutorily required notice [pursuant to R.C. 3109.051(G)(1)] does not, in and of itself, grant to the court the authority to prevent the party's relocating to another state.").
Neither does the relocation statute propose a change of custody as a remedy. It would appear that the statute contemplates only the revision of visitation as the remedy to a relocation of a residential parent. As a result, a change of custody due to relocation would have to be triggered by motions which go beyond this statute. Those motions ultimately appeared in this case.
The other basis of authority for the court's intervention would be the existing shared parenting plan. As incorporated in the separation agreement and divorce decree, the plan contained an express provision dealing with the issue of relocation. However, it did not directly restrict either parent's ability to relocate with the child. Similar to the relocation statute, the plan only
required each parent to give notice of his or her intent to relocate. When this occurred, the terms of the plan then gave the court the power to schedule a hearing "to determine whether it is in the best interest of the child to revise the possession or parenting schedule for the child." This was done in the instant case, and the resulting modification took place in the "possession" and "parenting schedule" of the child.
The magistrate's finding that "[b]oth parties were to remain in the Aurora, Ohio area" can only be interpreted as addressing his conclusion that such a presumption existed under the original shared parenting agreement. However, as previously mentioned, we do not find any expression of that presumption in the original plan. Nowhere in the plan are there terms which express that intent or implicitly require the parties to remain in Aurora. Thus, the plan itself did not somehow grant the trial court the power to deny either parent the ability to relocate with the child. In point of fact, when the issue of intent was raised, the magistrate refused to allow parole evidence on this subject.
The magistrate's finding of an intent that the parties remain in Aurora is, therefore, not only speculative, but is contrary to the unambiguous implication of the "relocation" clause. Nevertheless, the magistrate correctly made no attempt on that basis to restrict appellee's ability to move with the child to Michigan, or to order her to return with the child to Portage County.
That being said, we turn to appellant's assertion that the trial court erred by denying his motion for modification of custody of the child. Specifically, appellant sought to have the shared parenting plan terminated and to be named the sole residential parent and legal custodian of the child. The inclusion of these requests and remedies required the magistrate to go beyond the relocation statute and the original plan. The end result was that the trial court did not grant appellant's request, but instead continued the shared parenting plan with modifications. These modifications altered the previous plan in that each parent was now designated the residential parent during the time in which the child was in that party's care.[5]
Under the previous plan, appellee had been designated the residential parent and appellant the non-residential parent. While appellant was granted longer weekend visits than under the original plan, appellee still had a greater amount of time with the child.
In considering appellant's request to alter the allocation of parental rights and responsibilities for the care of the children, the trial court had the power to exercise broad discretion. SeeDavis v. Flickinger (1997), 77 Ohio St.3d 415, 421, citingTrickey v. Trickey (1952), 158 Ohio St. 9, 13; Gardini v. Moyer
(1991), 61 Ohio St.3d 479, 484. Thus, the judgment of the trial court must not be reversed on appeal, absent an abuse of discretion. See Davis at 418, citing Miller v. Miller (1988),37 Ohio St.3d 71.
The term "abuse of discretion" implies more than simply legal error; rather, it must be shown that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Finally, where the trial court's decision is supported by a substantial amount of credible and competent evidence, the decision will not be reversed by a reviewing court as being against the weight of the evidence.Davis at 418, citing Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus.
However, the role of the trial court is complicated because the termination and modification of a shared parenting plan are addressed separately in the Revised Code. R.C. 3109.04(E)(2)(b) provides the relevant criteria in determining whether to grant a party's motion to terminate a shared parenting plan. Brannon v.Brannon (June 27, 1997), Trumbull App. No. 96-T-5572, unreported, at 6. This section reads, in pertinent part:
 "The court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children."
Thus, the plan may be terminated upon the request of either party, or when it is no longer in the best interest of the child.Brannon at 7.
On the other hand, when the court is moved to modify a shared parenting plan substantially, R.C. 3109.04(E)(1)(a) governs. It reads as follows:
 "(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
Thus, the primary difference would appear to be that the former code section does not require a finding of a change of circumstances. See Brannon at 6-7. Nor does it require a finding that "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child" as that requirement is only triggered when there is a request for a change in the designated residential parent of the child, and when the first two prongs of R.C. 3109.04(E)(1)(a) have been satisfied.
In the instant matter, the court chose not to terminate the shared parenting plan, but instead modified the plan. Thus, we will first analyze whether the trial court properly determined that there had been a change of circumstances, as is required in the examination of a request for modification under R.C.3109.04(E)(1)(a). Then, if that threshold finding was proper, we will address the trial court's analysis of the best interest requirement under both R.C. 3109.04(E)(2)(b), the termination section, and under R.C. 3109.04(E)(1)(a), the modification section.
It is our holding that the trial court did not abuse its discretion in determining that a change of circumstances had occurred pursuant to R.C. 3109.04(E)(1)(a). While relocation alone would not be sufficient to qualify as a change of circumstance, there was a finding, and evidence to support that finding, that the temporary plan of alternating weeks of custody, which was implemented to accommodate the relocation, was unsatisfactory for all concerned. Both experts were in concert on this point. Thus, a finding of a change of circumstances was proper. See Davis; see, also, Schiavone v. Antonelli (Dec. 10, 1993), Trumbull App. No. 92-T-4794, unreported, 1993 WL 548034.
In then moving to the best interest factor required under both analyses, the court must take into account all relevant factors, including, but not limited to, those set out in R.C.3109.04(F)(1). They are:
 "(a) The wishes of the child's parents regarding his care;
 "(b) * * * [T]he wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to his home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation.
 "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 "(g) Whether either parent has failed to make all child support payments * * *;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused or a neglected child * * *;
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
In the instant case, the trial court determined that it was not in the best interest of the child to terminate the shared parenting plan. We find no abuse of discretion in this decision. Both parents were found to be competent and loving parents. Both experts recommended that both parents should continue to play a significant role in the child's life. Moreover, at least one of the experts recommended that the shared parenting plan be salvaged as much as possible.
After determining that the plan would not be terminated, as well as determining that a change of circumstances existed, the trial court could move on to entertain appellant's motion to modify the plan to designate himself as the sole residential parent. Under R.C. 3109.04(E)(1)(a), this required appellant to demonstrate that all three prongs of the test enumerated in that section had been met: (1) that a change of circumstances had occurred in either parent's circumstances; (2) that the proposed change in the designated residential parent was in the child's best interest; and (3) that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. R.C. 3109.04(E)(1)(a); Davis; see, also, Schiavone. In applying these standards, this court has consistently held that R.C. 3109.04 provides for a "strong presumption" in favor of retaining the residential parent.Schiavone at 3.
However, in addressing these three prongs, the trial court found that appellant failed to demonstrate that the proposed change in the designated residential parent was in the child's best interest. Again, we find no abuse of discretion. The record before this court includes a substantial amount of competent, credible evidence supporting the trial court's decision not only to retain appellee as a residential parent, but to give her the greater allocation of time caring for the child.
The findings of the magistrate were that although both parents were found to be competent, loving parents, if "a primary residential parent" must be named, that parent should be appellee. As supporting evidence, the magistrate had Dr. Alexander's findings that at this point in his development, the child was more dependent on his mother, his primary caregiver.[6]
There was also no dispute that during the week when the child was in appellant's care, the child was taken to a neighbor who babysat from 7:45 a.m. to 6:30 p.m. There was no claim made that this situation would change in the future. Dr. Alexander found it significant that appellee would have a greater opportunity to spend direct parenting time with the child, an important factor because of the child's young age. He also stated that this was likely to be the case regardless of where appellee lived.
Dr. Erard, appellee's expert witness, also testified that the current situation of alternating weeks of custody arrangement was not good for the child and that the child should have one primary residential home.
The trial court correctly recognized that the relocation alone was not the determinative issue, rather it was a single factor to consider in deciding both the change of circumstance issue pursuant to R.C. 3109.04(E)(1)(a); and the best interest issue under both R.C. 3109.04(E)(1)(a) and (E)(2)(b), including the various factors listed in R.C. 3109.04(F)(1).
Finally, we note that the magistrate's statement that the relocation was not in the best interest of the child was not a legal contradiction to his and the court's ultimate finding. That statement references best interest only in the narrower terms of the relocation issue. It does not address the overall best interest of the child as between a designated sole residential parent and shared parenting by both the mother and father. "Best interest" was ultimately examined in its broader context as is required in the analysis of a motion to terminate a shared parenting plan pursuant to R.C. 3109.04(E)(2)(b) and in a motion to modify the allocation of parental rights and responsibilities pursuant to R.C. 3109.04(E)(1)(a).
In conclusion, the trial court chose to modify the shared parenting plan to allow each party to be the residential parent when the child was in his or her respective care; however, the court did lengthen the respective terms of care so that the child saw his father less frequently, but for longer periods of time. While this may not have been the best or the fairest circumstance for appellant, the evidence was conclusive that this was in the best interest of the child. Consequently, when the trial court determined that appellant failed to demonstrate that his proposed termination or modification was in the best interest of the child, the trial court did not abuse its discretion in making the best of a bad situation. Moreover, in making such a finding, the trial court did not have to continue its analysis to determine the third prong under R.C. 3109.04(E)(1)(a), the weighing of the likelihood of harm prong. As the trial court's ultimate finding was based on competent, credible evidence in the record, the decision will not be disturbed on appeal. R.C. 3109.04(E)(1)(a); Davis at 418, citing Bechtol.
In light of the foregoing analysis, appellant's sole assignment of error is not well- taken. The judgment of the trial court is affirmed.
JUDITH A. CHRISTLEY, PRESIDING JUDGE.
NADER, J., concurs.
O'NEILL, J., dissents.
[1] Dr. Erard made it clear that he did not interview appellant, and, thus, that he was expressing his professional opinion as to what custody arrangement would be suitable for two-year-old children in general.
[2] Although this report was issued after appellee's move in January, much of the interviewing took place prior to appellee's move.
[3] The hearing was nonevidential in nature. Although appellant did not originally submit a transcript of the magistrate's hearing to the trial court, the trial court agreed to allow it to be subsequently submitted for consideration.
[4] In her brief, appellee asserts that appellant has since left his job in Ohio and is currently working in Arkansas, thus implying that this appeal has been rendered moot. Of course, we are unable to address this factor or argument as it is basic appellate law that a reviewing court may not add matter to the record which was not before the trial court, and then decide the appeal on the basis of that matter. See State v.Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus; see, also, Drakulich v. Indus. Comm. (1940),137 Ohio St. 82, 87.
[5] As appellee has not challenged the change to the alternating residential parent system, it is not necessary to address the propriety of that decision in relation to R.C. 3109.04.
[6] Dr. Alexander was the court-appointed psychologist.