OPINION
{¶ 1} Defendant-Appellant, Wilbur Morris, appeals a Mercer County Common Pleas Court judgment, granting Plaintiff-Appellee's, April Loucks, motion for change of parental rights of Morris and Loucks' two minor children. Morris contends the trial court erred in granting a modification of parental rights without first finding that a change in the circumstances and finding that the modification was necessary to serve the best interests of the children. Additionally, Morris contends that the trial court erred in granting the September 10, 2002 Ex Parte order, granting Loucks temporary custody of the children, and in overruling Morris' motion in limine to admit pre-decree evidence. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In September of 1999, pursuant to a Magistrate's decision, Morris was designated the residential parent and legal custodian of he and Loucks' two minor children, Dalton and Tacoma. At the time of the entry, Dalton was three and a half years old and Tacoma was almost two. Under the 1999 decree, Loucks was ordered to pay child support and granted reasonable visitation.
 {¶ 3} In March of 2002, Loucks filed a motion for parental rights, requesting that she be designated the residential parent and legal custodian of both Dalton and Tacoma. In Loucks' motion, she filed an affidavit alleging possible sexual abuse of Tacoma, which the Mercer County Department of Job and Family Services were investigating, and that Morris was not adequately feeding and clothing the children. Loucks' affidavit also noted that Morris had consented to the children residing with Loucks during the investigation of the abuse allegations and that she feared Morris may withdraw his consent at anytime.
 {¶ 4} In June of 2002, following a hearing, the Magistrate ordered the parties to participate in mediation. During this period, the children remained in Loucks' custody and Morris was given supervised visitation with the children.
 {¶ 5} On September 10, 2002, Loucks filed an Ex Parte motion, requesting that she be granted a temporary order designating her residential parent and legal custodian of both children. Loucks' motion was supported by an affidavit of Allan Pax, claiming he witnessed Morris physically abuse and neglect the children. That same day, Loucks' motion was granted, designating her temporary residential parent and legal custodian. The temporary order also called for a hearing on the issue to be held on September 23, 2002. Pursuant to the temporary order the children remained with Loucks until a permanent custody hearing was set.
 {¶ 6} In August of 2003, a permanent custody hearing was held, in which Morris, Loucks, the guardian ad litem, the children's teachers and various other individuals testified. Subsequently, the court granted Loucks' motion to reallocate parental rights and responsibilities. In its judgment entry, the court found that there had been a change in the circumstances, that having considered all relevant factors in R.C. 3109.04(F), it was in the best interests of the children to be placed in the permanent custody of the mother, and that advantages of being permanently placed with the mother outweighed the harm. It is from this judgment Morris appeals, presenting three assignments of error for our review.
 Assignment of Error No. 1 The trial court erred in violation of Ohio Revised Code §3109.04(E)(1)(a) by reallocating parental rights without firstfinding that based on the facts that had arisen since the priorDecree, but were unknown to the Court at the time of the priorDecree, to wit, September 1, 1999, a change has occurred incircumstances of the child or the child's residential parent andthat the modification is necessary to serve the best interest ofthe child.
 {¶ 7} In the first assignment of error, Morris asserts that the court made no determination that a change had occurred in the circumstances of the children or of the residential parent, that the modification was necessary to serve the best interest of the children, and that the harm resulting from the change would be outweighed by the benefit of the result. In its eight page judgment entry, the trial court made numerous findings, including that there had been a change in the circumstances, that the modification was necessary to serve the best interests of Dalton and Tacoma, and that the harm resulting from the change would be outweighed by the benefit of the result. Thus, while Morris states that these findings were not made, that argument is clearly without merit. However, the crux of Morris' argument deals with whether the court's findings are supported by substantial competent and credible evidence.
 {¶ 8} We initially note that when "an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus; see, also, Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418,674 N.E.2d 1159. Furthermore, a reviewing court should afford the utmost deference to a trial court's decision regarding child custody matters. See, e.g., Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846. Consequently, absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding child custody. See, e.g., Bechtol, supra. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis,77 Ohio St.3d at 419.
 {¶ 9} While a trial court's discretion in a custody modification proceeding is broad, it is not absolute. The trial court must follow the procedure outlined in R.C. 3109.04.Miller, 37 Ohio St.3d at 74. R.C. 3109.04(E)(1)(a), which governs the modification of a prior decree of the allocation of parental rights and responsibilities, provides:
The court shall not modify a prior decree allocating parentalrights and responsibilities for the care of children unless itfinds, based on facts that have arisen since the prior decree orthat were unknown to the court at the time of the prior decree,that a change has occurred in the circumstances of the child, hisresidential parent, or either of the parents subject to a sharedparenting decree, and that the modification is necessary to servethe best interest of the child. In applying these standards, thecourt shall retain the residential parent designated by the priordecree or the prior shared parenting decree, unless amodification is in the best interest of the child and one of thefollowing applies:
* * *
(iii) The harm likely to be caused by a change of environmentis outweighed by the advantages of the change of environment tothe child.
 {¶ 10} In determining whether to modify a prior allocation of parental rights and responsibilities, three factors generally guide a trial court's decision: (1) whether, based on facts occurring after the original decree or unknown to the court at the time of the original decree, a change has occurred in the circumstances of the child or his residential parent, (2) whether a modification is in the child's best interests, and (3) whether the benefits resulting from the change will outweigh any harm. See R.C. 3109.04(E)(1)(a); see, e.g., Clark v. Smith (1998),130 Ohio App.3d 648, 653, 720 N.E.2d 973.
 {¶ 11} In Davis v. Flickinger, 77 Ohio St.3d at 416-417, the Ohio Supreme Court discussed the requirement of a "change in circumstances," emphasizing that a trial court's finding of whether a change in circumstances has occurred must not be disturbed absent an abuse of discretion. The Court stated:
R.C. 3109.04 requires a finding of a `change incircumstances.' Such a determination when made by a trial judgeshould not be disturbed, absent an abuse of discretion. Indetermining whether a change in circumstances has occurred so asto warrant a change in custody, a trial judge, as the trier offact, must be given wide latitude to consider all issues whichsupport such a change, including a change in circumstancesbecause of a child's age and consequent needs, as well asincreased hostility by one parent (and that parent's spouse)which frustrates cooperation between the parties on visitationissues. Id.
The Court also noted, that "* * * there must be a change of circumstances to warrant a change of custody, and the change must be of substance, not a slight or inconsequential change." Id.
 {¶ 12} The purpose for this required showing is to prevent the children from being subjected to:
* * * a constant tug of war between their parents who wouldfile a motion for change of custody each time the parent out ofcustody thought he or she could provide the children a `better'environment. The statute is an attempt to provide some stabilityto the custodial status of the children, even though the parentout of custody may be able to prove that he or she can provide abetter environment. Id., citing Wyss v. Wyss (1982),3 Ohio App.3d 412, 416, 445 N.E.2d 1153, 1157.
 {¶ 13} "In determining whether a `change' has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her * * * and such a decision must not be reversed absent an abuse of discretion." Davis,77 Ohio St.3d at 418, citing Miller, 37 Ohio St.3d 71.
 {¶ 14} Additionally, not only must the change of circumstances be of consequence, but it also must relate to the child's welfare. See Stout v. Stout (Oct. 17, 2001), 3rd
Dist. No. 14-01-10, unreported, 2001 WL 1240131. "Implicit in the definition of changed circumstances is that the change must relate to the welfare of the child." Holtzclaw v. Holtzclaw
(Dec. 14, 1992), 12th Dist. No. CA92-04-036, unreported, 1992 WL 368712.
 {¶ 15} Once a change in circumstances has been demonstrated, a trial court next must consider whether a modification will serve the child's best interests. R.C. 3109.04(F)(1) specifies the factors that a trial court should consider when determining a child's best interests:
In determining the best interest of a child * * * the courtshall consider all relevant factors, including, but not limitedto:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child * * * regarding thechild's wishes and concerns as to the allocation of parentalrights and responsibilities concerning the child, the wishes andconcerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with hisparents, siblings, and any other person who may significantlyaffect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved inthe situation;
 (f) The parent more likely to honor and facilitate visitationand companionship rights approved by the court;
 (g) Whether either parent has failed to make all child supportpayments, including all arrearages, that are required of thatparent pursuant to a child support order under which that parentis an obligor;
 (h) Whether either parent previously has been convicted of orpleaded guilty to [certain criminal offenses];
 (i) Whether the residential parent or one of the parentssubject to a shared parenting decree has continuously andwillfully denied the other parent his or her right to visitationin accordance with an order of the court;
 (j) Whether either parent has established a residence, or isplanning to establish a residence, outside this state."
 {¶ 16} Finally, if a trial court concludes that a change in circumstances has occurred and that a modification of the prior allocation of parental rights and responsibilities would serve the child's best interests, a trial court may not modify a custody order unless the court determines that the harm likely to be caused by a change of environment is outweighed by the benefits of the change of environment. R.C. 3109.09(E)(1)(a).
In the case sub judice, the trial court made the following findings:
From the evidence given, the court finds the following:
 1. The parties are the parents of the two children, Dalton,age 7, and Tocoma, age 5. The parties were never married and byan agreed order, custody was given to the father when the partiesseparated in 1999.
 2. The children are presently living with mother by atemporary order of juvenile court designating her residentialparent and legal custodian.
 3. Mother is currently married to Brian Loucks, residing * * *Ada, Ohio. Mother has another child, Austin, that resides withher. Mr. Loucks is employed at K's Merchandise, working in thearea of Decatur, Illinois, probably the Mount Zion area. Motherappears to be in good health and has worked part-time as a nurse,since completing her education.
 4. At the time of the original separate, father was living inan apartment in St. Marys, Ohio. He now lives in a house trailer,which is valued at $600.00 at * * * Celina, Ohio. He is notemployed, but does own a car.
 5. Father testified extensively with regard to his health;diagnosis of back problems, spine out of line, lumps on his neck,and suffering from migraines. He is presently trying to drawdisability. He could have gone back to work at Honda, but hestates he didn't have the energy to the work as he gets tiredvery easily. His doctors have prescribed Inderal L.A., Viox,Flexoril, Ultracet, Fioricrt, and Imitrex. He states that becauseof his chronic illness, he sleeps about 15 hours a day.
 6. Both parties testified that one of the reasons for theagreed custody order was that mother could finish her education,which she has completed.
 7. From this aforementioned evidence, the court finds thatthere has been a change of circumstances.
 {¶ 17} Upon review of the entire record, we find that the court's determination of change of circumstance is supported by competent, credible evidence.
 {¶ 18} Morris argues that the trial court's reliance upon Loucks' current situation and the agreement for Morris to take custody while Loucks finished school was improper, based on the requirement in R.C. 3109.04(E)(1)(a) that where there is a residential, custodial parent, the change in circumstance must be a change that has occurred with either the child or the residential parent. While Morris sets forth the correct standard, in that the court was not to consider the change in Loucks' circumstances, we find there to be sufficient evidence to support the court's finding of a change in the circumstances of the residential parent, Morris.
 {¶ 19} Here, the court relies upon Morris' moving, his employment status and his steadily declining health. First, Morris moved from an apartment that was described by Louks as being "pretty nice," to a trailer that was valued at six hundred dollars. While the timing of Morris' move was somewhat unclear, Morris testified that he did move after he took custody of the children. Furthermore, Louks testified that the apartment was in a complex and had a yard where the children could play. She also testified that the times she had been to Morris' trailer it had been dark, there had been garbage in the trailer, and that she could smell a foul odor outside.
 {¶ 20} Additionally, the court noted that Morris was unemployed. Morris testified that he had worked through temporary work agencies for at least two months after taking custody of the children. He also stated that he had been hired on at Honda, but was fired because of missed days due to his illness. There was also extensive testimony to support the court's finding of Morris' chronic illness. Morris, as well as the guardian ad litem testified that Morris has been dealing with chronic health problems since at least 1999.
 {¶ 21} This Court finds that the trial court properly determined that there has been a material change in circumstances. While there is no single event that can be pointed to show a major change in Morris' circumstances, we are satisfied that the evidence does show that Morris' situation was steadily deteriorating. While none of these changes if viewed independently would necessarily constitute a change as contemplated under R.C. 3109.04(E)(1)(a), when viewed collectively, it is clear that a change of substance had occurred.
 {¶ 22} Furthermore, we find that there is substantial competent, credible evidence to support a finding that the modification was necessary to serve the best interest of the children and that the harm that would result from the change of custody would be outweighed by the benefit from the result of the change.
 {¶ 23} In its judgment entry, in determining whether a modification was in the best interests of the children and whether the harm that may result from a modification would be outweighed by the benefit, the court relied upon the following factors: the children's school records with both Morris and Loucks; Morris' lax attitude and lack of involvement in the children's schooling; Loucks' positive attitude and substantial involvement in the children's schooling; Morris' visitation record and his obstruction of Loucks' visitation with the children when he had custody of the children; the fact that Morris had left the children asleep in the car in freezing temperatures, when the children were not appropriately dressed; Morris' use of corporal punishment on Dalton, as opposed to Loucks' use of time-out's as punishment; the fact that Morris did spend time coloring, painting and watching television with the children; the fact that the children have adjusted well to being placed with Loucks; a finding that the move to Illinois would not detrimentally effect the children; the fact that Morris had told Loucks and the guardian ad litem that, if custody was granted to Loucks, Morris would not see the children until they were eighteen, but would maintain minimum contact so that Loucks' current husband would not be able to adopt the children; the fact that Loucks would be more willing to facilitate visitation; and, finally, the guardian ad litem's recommendation that Loucks being named the residential parent and legal guardian was in the children's best interests.
 {¶ 24} Again, upon a review of the record, we find there is substantial competent, credible evidence to support each of the court's findings. At the August 2003 hearing, both Loucks and Morris testified, as well as, the children's teachers and school administrators, an employee of Home Family Resources, the agency that supervised Morris' visitation with the children, friends of Morris, Morris' mother, and the guardian ad litem. The testimony and evidence presented clearly supports the above findings of the trial court.
 {¶ 25} There was testimony by two of Dalton's teachers and school administrators indicating Dalton had missed several days of school and that Morris did not want to be involved with Dalton's learning. Additionally, there were several letters written to Dalton's teacher by Morris, stating that Dalton was not to bring books home with him from school, that the teacher was responsible for teaching Dalton, and that the teacher should help Dalton tie his shoes. There was also testimony by the children's current teachers indicating that both Dalton and Tacoma were doing well and had adjusted well to their transition into their new school. There was testimony presented by a friend of Morris that he had left the children in the car during freezing temperatures, that he failed to dress the children appropriately for cold weather, and that he had slapped Dalton with an open hand Loucks testified that Morris had missed visitations. And, finally, the guardian ad litem testified that it was in the children's best interests to be with Loucks.
 {¶ 26} While Morris argues that there is evidence to support a finding that a modification was not necessary and that the court's best interest findings were based solely on a "wealth of the parents" determination, we must give the trial court the utmost deference and will not reweigh the evidence where there is sufficient evidence to support the findings of the court.Seasonal Coal Co. Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273. While there is evidence to support Morris' argument, namely that there is some testimony to support that a modification was not necessary, conflicts in testimony are best left to the trier of fact to resolve. Id. "If the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." Id. Deference is given to the trier of fact because he is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. These observations, and the information to be gleaned from them, do not come across to the reviewing court through the printed record. Gardini v. Moyer (1991),61 Ohio St.3d 479, 485, 575 N.E.2d 423.
 {¶ 27} Thus, having found that the court's findings are supported by substantial competent, credible evidence, we will not reweigh the evidence.
 {¶ 28} Accordingly, the first assignment of error is overruled.
 Assignment of Error No. 2 The trial court erred in granting the Ex Parte Order ofSeptember 10, 2002.
 {¶ 29} In the second assignment of error, Morris asserts that the trial court erred in granting the September 10, 2002 Ex Parte motion, which granted Loucks custody of the children, because a hearing was never held. Juv. R. 13(B)(3) does require that a hearing be held within seventy-two hours after the granting of a temporary custody order. No such hearing was held in this case. However, the temporary order granting Loucks custody pending the judgment on Loucks' motion for parental rights ultimately merged with the final judgment of the court, which granted Loucks' permanent residential and custodial parent status. Thus, based on the above finding that the trial court's final order was proper, the issue is rendered moot. App. R. 12(A)(1)(c); Wyss v. Wyss
(1982), 3 Ohio App.3d 412, 413, 445 N.E.2d 1153.
 {¶ 30} Accordingly, the second assignment of error is overruled.
 Assignment of Error No. 3 The trial court erred in overruling the motion in limine filedby the Defendant on April 11, 2003.
 {¶ 31} In the third assignment of error, Morris asserts that the trial court erred in overruling the April 11, 2003 motion in limine. In Morris' motion in limine, he requested to put on evidence of Loucks' suicide attempt that had taken place prior to the last custody decree.
 {¶ 32} As this court has previously explained, in order to determine whether or not a change of circumstances has occurred, the court may only consider facts that have arisen since the time of the prior decree, or facts that were unknown to the court at the time of the prior decree. R.C. 3109.04(E)(1)(a). However, once it has been determined that a change of circumstances exists, a court may consider prior facts for purposes of determining what is in the best interest of the child. See Moyerv. Moyer (Sept. 24, 1992), 10th Dist. No. 92AP-27, unreported, 1992 WL 239024; see, also, Jacobs v. Jacobs (Sept. 21, 1990), 11th Dist. No. 89-A-1468, unreported, 1990 WL 136611.
 {¶ 33} However, the admission and exclusion of evidence is generally within the discretion of the trial court. O'Brien v.Angley (1980), 63 Ohio St.2d 159, 163, 407 N.E.2d 490. Accordingly, while the trial court may consider facts that were available at the time of the prior decree, it is not required to.Schmidt v. Schmidt (1982), 7 Ohio App.3d 175, 177,454 N.E.2d 970. Additionally, the trial court does not abuse its discretion in limiting the admission of pre-decree evidence in a motion for change of custody. In re Reynolds (1982), 2 Ohio App.3d 309,311, 441 N.E.2d 970.
 {¶ 34} Thus, finding that while the court could have considered pre-decree evidence in determining the best interests of the children but that it was not required to consider such evidence, we cannot find the court abused its discretion. Accordingly, the third assignment of error is overruled.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Shaw, P.J., and Cupp, J., concur.