This timely appeal arises from a decision of the Columbiana County Court of Common Pleas, Juvenile Division, awarding custody of Michael A. Nentwick ("Michael"), a minor child, to his father James Nentwick ("Appellee"), pursuant to R.C. § 3109.04(E)(1)(a). For the following reasons, we must affirm the judgment of the trial court.
Sue O'Hanlon ("Appellant") was married and divorced twice prior to establishing a relationship with Appellee. Her first marriage lasted three years and produced a son, Steve, who is now twenty years old. The second marriage, to Appellee's brother, lasted three years and produced daughters Jamie, fourteen years old, and Katie, twelve.
Appellee and Appellant conducted an on-again, off-again relationship in the 1990's. Michael was born on January 14, 1992, while Appellee and Appellant were cohabitating. The relationship finally ended in May of 1999. During the relationship, Appellant and the four children would cohabit part-time with Appellee in Appellee's home. (Tr. p. 30). Appellant always maintained her own separate apartment during her relationship with Appellee. (Tr. p. 209).
Appellee has been in business for twenty-five years as a heating/ventilation/air-conditioning specialist. (Tr. p. 327). Appellee owns his home, as well as his own business, shop and vehicles. (Tr. p. 328).
Appellant rents a two-bedroom apartment with five people and five pets in residence. She is sporadically employed part-time, collects child support and receives various government entitlements. (December 6, 1999, GAL Interview). Appellant filed personal bankruptcy in 1998. (Tr. p. 203).
On or about June 8, 1999, Appellee filed in the Columbiana County Court of Common Pleas, Juvenile Division, a motion to establish visitation with Michael. At that time, Appellant initiated proceedings against Appellee based on accusations that he sexually abused Michael and Jamie. (Tr. p. 7). In July of 1999, the court ordered supervised visitation between Appellee and Michael. (July 26, 1999, Judgment Entry, 1).
In August of 1999, the court ordered a continuation of visitation between Appellee and Michael and also agreed to conduct an in camera
interview with Michael. (August 16, 1999, Judgment Entry). In October of 1999, a guardian ad litem ("GAL") was appointed. Additionally, psychological and substance abuse evaluations and home evaluations were ordered for both Appellee and Appellant. (October 7, l999, Judgment Entry).
In November of 1999, Appellee and Appellant each submitted to substance abuse evaluations and psychological evaluations. Appellee submitted to a drug test and tested negative.
In December of 1999, the court conducted an in camera interview with Michael in the presence of the GAL. The court, with the consent of the GAL, granted Appellee unsupervised visitation with Michael two evenings each week. (December 9, 1999 Judgment Entry).
Later that month, Appellee filed a motion to change allocation of parental rights and responsibilities in order to gain custody of Michael. Appellee alleged that a change of circumstances had occurred, referring to Appellant's unsupported allegations of Appellee's sexual misconduct and Appellant's pattern of alienating Michael from Appellee. (December 15, 1999 Motion p. 2).
The trial court conducted a hearing on the motion to reallocate parental rights and responsibilities on May 9th and June 29, 2000. On July 27, 2000, the court filed its decision naming Appellee as the primary residential parent.
Appellant's sole assignment of error asserts:
 "THE JUDGMENT OF THE TRAIL [sic] COURT, FINDING A CHANGE OF CIRCUMSTANCES WARRANTING MODIFICATION, AND FINDING THAT MODIFICATION OF CUSTODY IS NECESSARY TO SERVE THE BEST INTERESTS OF THE CHILD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant presents several sub-issues for review. The first sub-issue asserts:
"That the trial court abused its discretion is shown by the court's forming a bias in favor of the Plaintiff before hearing evidence."
Appellant argues that the trial court made certain comments which appeared favorable to Appellee regarding Appellant's motives behind the sexual abuse charges leveled against Appellee. Appellant's allegation is based on a comment made by the trial court which is contained in the April 10, 2000, Judgment Entry. Appellant claims that the trial court's action in this regard exhibits bias against her and constituted an abuse of the court's discretion. Based on the record herein, Appellant's argument to this effect must fail.
On April 7, 2000, a hearing was held on a motion to quash certain subpoenas served upon the prosecuting attorney's office and upon an investigator of Columbiana County Children's Services. The April 10, 2000, entry which followed that hearing indicated that Appellee had, "concerns regarding the chronology of the [sexual abuse] investigation * * *". The judgment entry also noted, "that the investigation by Department [of Children's Services] was initiated by Appellant in the approximate time period the initial [change of custody] proceedings were filed in this Court." (April 10, 2000 J.E., 1). The trial court, "confirmed [Appellee's] general suspicions in that regard * * *." (April 10, 2000 J.E. 2). Appellant argues that in this statement the trial court exhibits undue and prejudicial bias.
Appellant argues that this single statement indicates that the court believed the coincidental timing of Appellant's allegations of sexual abuse with Appellee's request for custody of Michael made the allegations unbelievable. Appellant points out that the court had not yet heard any trial testimony when this statement was made. Appellant argues that the statement, and the fact that the trial on the merits had not commenced, indicates that the court had prejudiced the matter.
R.C. § 2701.03 permits a litigant to file an affidavit of disqualification of a judge of a common pleas court prior to trial and to have it reviewed by a justice of the Ohio Supreme Court. This procedure adequately permits a litigant to challenge the participation of an allegedly biased or prejudiced judge prior to trial. Bland v. Graves
(1994), 99 Ohio App.3d 123, 135. Because Appellant did not take advantage of the statutory remedy for disqualification, any alleged error in that regard was waived. Rafferty v. Scurry (1997), 117 Ohio App.3d 240, 244;State v. Cook (Dec. 29, 1995), Hamilton App. No. C-950090, unreported. Thus, we are precluded from hearing this issue. Even if this error had not been waived, the trial judge's comment in the April 10, 2000, Judgment Entry appears to be no more than an observation about the timing of certain factual events relevant to the motion to quash.
Appellant's second, fourth, fifth, and sixth sub-issues are all related to modification of custody. For clarity of analysis, they will be grouped together.
Appellant's second sub-issue asserts:
 "Absent evidence that a person in some way influenced her children, aged eight and thirteen years, to make accusation [sic] of sexual abuse upon them by the other parent, is it proper for a court to find that such influence or manipulation has taken place?"
Appellant's fourth sub-issue asserts:
 "Is it proper for a court to adopt a position that, when allegations of sexual misconduct are pursued by the mother, but are found by the court to be unfounded, a change of circumstances will invariably be found to have occurred, warranting a change of custody to the father?"
Appellant's fifth sub-issue asserts:
 "If the answer to the above is yes, does such per se ruling have a `chilling effect' on a parent's pursuing allegations of sexual abuse? Would a parent then refrain to pursue such allegations for fear she would lose custody of her children?"
Appellant's sixth sub-issue asserts:
"Is it proper to separate a child from his siblings?"
Appellant argues that the trial court erred in finding a change of circumstances significant enough to grant a change of custody. Appellant also argues that the best interests of the child would not be served by a change in custody. Appellant further argues that the harm resulting from the separation of Michael from his siblings outweighs any benefit of a change of custody.
It is well settled that a trial court is given broad discretion in its determination of parental custody rights. Booth v. Booth (1989),44 Ohio St.3d 142, 144. A trial court's custody determination will therefore not be disturbed unless it involves an abuse of discretion.Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23. An abuse of discretion connotes that the trial court's decision was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. The trial court has discretion to do what is equitable upon the facts and circumstances of each child custody case. Booth, supra, at 144. As such, a trial court does not abuse its discretion in an award of custody and its decision will not be reversed as against the manifest weight of the evidence when it is supported by a substantial amount of competent and credible evidence. Bechtol, supra, at 23.
With respect to our duty of deference to the trial court in disputes over the custody of children, the Ohio Supreme Court has stated:
"The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." Miller v. Miller (1988),37 Ohio St.3d 71, 74.
Our threshold question is whether the trial court was ruling on a modification of custody or an initial custody determination. Generally, a natural father of a child born out of wedlock has equal standing with the mother to assert custody rights in an initial custody proceeding. See Inre Byrd (1981), 66 Ohio St.2d 334, paragraph one of syllabus, later codified in R.C. § 3109.042. The primary concern in initial custody proceedings is the best interests of the child. Id. Although there is nothing in the record indicating that Appellant was granted custody by order of court of Michael prior to the December 15, 1999, Motion to Change Allocation of Parental Rights and Responsibilities, the parties do not appear to dispute that Appellant was the residential parent at the time Appellee's motion was filed. Based on the record, we will presume that Appellant was the sole residential parent of Michael prior to December 15, 1999, and that the subsequent proceedings relate to a modification of custody rather than its initial determination.
While a trial court's discretion in a custody modification proceeding is broad, it is not absolute and must be guided by the language set forth in R.C. § 3109.04. Miller, supra, 37 Ohio St.3d at 74. This statutory provision provides:
"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds * * * that a change has occurred in the circumstances of the child, [or] his residential parent * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and * * * [t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. § 3109.04(E)(1)(a).
Thus, three elements must exist in order for the trial court to properly modify residential parent status: (1) there must be an initial threshold showing of a change in circumstances; (2) if circumstances have changed, the modification of custody must be in the children's best interests; and (3) any harm to the children resulting from a modification of the plan must be outweighed by the advantages of such a modification.Rohrbaugh v. Rohrbaugh (2000), 136 Ohio App.3d 599, 604. The record must support each of these findings or else the modification of child custody is contrary to law. Davis v. Flickinger (1997), 77 Ohio St.3d 415, 417. Additionally, R.C. § 3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by prior decree is in the child's best interest. Rohrbaugh, supra, at 604.
The first issue before us is whether the trial court properly determined that a change in circumstances had occurred.
Appellant contends that there was no evidence that she influenced or encouraged Michael or Jamie to accuse Appellee of sexual abuse and that, without such evidence, the trial court should not have found that a change in circumstances had taken place. Appellant argues that, even if she had made false accusations of sexual abuse, there should not be a per se rule awarding custody to the falsely accused parent. Appellant citesBeekman v. Beekman (1994), 96 Ohio App.3d 783, for the proposition that a per se rule would have a chilling effect on the reporting of sexual abuse. Id. at 792 (Stephenson, J., concurring).
The record does not indicate that the trial court implemented a per se rule. The trial court relied on Davis, supra, to support its finding that a change in circumstances had taken place. Davis held that, "there must be a change of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change." Davis, supra, 77 Ohio St.3d at 418 (emphasis in original).Davis also held that the trial court has wide latitude in making a threshold determination that a change in circumstances has occurred. Id. at 416. Increased hostility between the parents and the frustration of visitation are factors which can support a finding of a change in circumstances. Id. 416-417. See also Beekman, supra, at 789; Holm v.Smilowitz (1992), 83 Ohio App.3d 757, 773.
The trial court's finding of a change in circumstances appears to be based primarily on Appellant's interference with Appellee's visitation rights and on her attempts to erode Michael's love and affection for Appellee. (July 27, 2000 J.E., paragraph 4). Appellant does not suggest that these findings by the trial court were in error. The record supports that Appellant interfered with or allowed Michael the option of avoiding visitation on a number of occasions. (Tr. 237). June Boley, the GAL, testified that Appellant felt free to include her children in derogatory conversations about Appellee. (Tr. 91ff.). Appellee also testified that Appellant wanted her children to believe that he was an animal, a vicious person, and wanted Michael to hate him. (Tr. 337). This evidence alone, apart from any evidence regarding the truth or falsity of the sexual abuse allegations, constitutes competent and credible evidence supporting that a change in circumstances had occurred.
It is clear from the record that the sexual abuse allegations played an important role in the trial court's analysis, particularly with respect to the "best interests" determination. The trial court did not believe that the sexual abuse accusations were true and attributed the accusations to Appellant's history of manipulative behavior. (July 27, 2000, J.E., paragraph two). The trial court's conclusion was based on its own evaluation of the weight and credibility of the evidence. A reviewing court will not second-guess weight and credibility determinations made by the trier of fact. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus.
There is evidence in the record supporting a conclusion that the sexual abuse accusations were fabricated. Dr. Darnel, a psychologist retained by all parties in this case as an independent evaluator, testified that the accusations were preposterous. (Tr. 279). On the other hand, there is testimony which could support a conclusion that some type of sexual abuse had taken place. (Tr. 425). The trial court believed the evidence indicating that no abuse took place. The trial judge was able to view the witnesses, observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the testimony. SeeSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. We will not disturb the trial court's finding in this regard.
R.C. § 3109.04(F)(1)(f) sets forth the following as one factor that a trial court must consider in determining the best interests of the child: "The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights". A trial court is also permitted to consider other factors not listed in R.C. § 3109.04(F) in making its decision as to the best interests of the child. See R.C. § 3109.04(F)(1). False accusations of sexual abuse would certainly have an impact on a parent's willingness to honor visitation orders. Such accusations constitute a legitimate additional factor for a trial court to consider in making a custody determination.Beckman, supra, 96 Ohio App.3d at 789, 792; Wilson v. Wilson (Jan. 25, 1994), Lawrence App. No. 93 CA 9, unreported. The conclusion that there was no sexual abuse did not, in and of itself, determine the outcome of the case. The sexual abuse allegations were one part of the trial court's evaluation as to whether Appellant or Appellee would be more likely to facilitate and abide by visitation orders, and ultimately whether a change in custody would be in Michael's best interest.
The trial court specifically found that the change in custody would be in the best interests of Michael and that the harm caused by the change would be outweighed by the benefits. (July 27, 1999, J.E., paragraph 4). We find no error in the factors used by the trial court or the inferences drawn from the evidence presented at trial. Although we do not condone a change of custody implemented merely to punish a parent for making or encouraging false accusations of sexual abuse, the record reflects that this is not what occurred here.
Appellant also contends that Michael should not be separated from his siblings. A child's interaction with his siblings is another factor a trial court must consider in making a "best interests" determination. See R.C. § 3109.04(F)(1)(c). Although split-sibling custody decisions involving young child are disfavored, they are not automatically barred. See In Matter of Larimer (Nov. 16, 1998), Athens App. Nos. 98CA04, 98CA05, unreported; Brown v. Long (July 27, 1984), Montgomery App. No. 8469, unreported. The overriding concern is always the best interests of the child. Other factors may override the general preference of keeping siblings together. We find no abuse of discretion here, where other factors were found by the trial court to be more significant than the preference to keep siblings together.
Appellant's final sub-issue asserts:
"Where accusations of drug abuse by the father have come from the parties' eight year old child, is it appropriate for the court to change custody to the father, where there is no indication that the mother has ever used drugs, there is admission by the father of prior drug use, and a substance abuse evaluation which indicates that the father is not being truthful in his denial of a substance abuse problem?"
Appellant argues that Appellee admitted to using marijuana and cocaine in the past. (Tr. 363). Appellant points to the testimony of Georgia Smith of the Columbiana County Mental Health Center that Appellee had squares of tinfoil and mounds of white powder in his home. (Tr. 159). Ms. Smith testified that Michael gave her this information, and that it was possible that Michael was referring to drugs or drug paraphernalia. (Tr. 159). Appellant also testified that Michael had told her a similar story. (Tr. 243). Appellant contends that Appellee should not be believed when he testified that he did not abuse drugs, and for this reason, he should not have been awarded custody of Michael. Not surprisingly, Appellee's testimony contradicts these aforementioned statements.
Appellant cites to no rule of law which would automatically bar a parent from having custody of a child because of a child's accusation that drugs or drug paraphernalia were in the parent's home. In any event, once again Appellant's argument is based on the credibility of witnesses, which is determined by the trier of fact. Seasons Coal Co., supra,10 Ohio St.3d at 80. The trial court may simply have believed Appellee when he testified that he was not an illegal drug user or abuser and disbelieved the testimony of Ms. Smith and Appellant. This Court cannot make credibility determinations. We must defer to the trial court's determination in this matter.
For all the foregoing reasons, we overrule Appellant's assignment of error and affirm the decision of the trial court in full.
Donofrio, J., concurs.
Vukovich, P.J., concurs.